PEOPLE v LUMLEY

Docket No. 88217. Submitted July 30, 1986, at Detroit. Decided
September 9, 1986.

Defendant, Herbert F. Lumley, was charged in the St. Clair
Circuit Court with first-degree criminal sexual conduct. Follow-
ing a hearing on the voluntariness of his confession, the trial
court, Ernest F. Oppliger, J., granted defendant's motion to
suppress written inculpatory statements defendant made fol-
lowing a polygraph examination. The people appeal by leave
granted from the trial court's order.

The Court of Appeals held:

1. There is no basis for the circuit court's conclusion that
defendant was in "constructive custody" when the confession
was made.

2. Under the totality of the circumstances, defendant's state-
ment was not induced by marijuana intoxication.

3. The use of the polygraph examination did not impugn the
validity of the confession. The trial court erred in suppressing
the statement.

Reversed and remanded.

1. EVIDENCE — *WALKER* HEARINGS — APPEAL.

The Court of Appeals is required, on an appeal from a trial
court's ruling in a *Walker* hearing, to examine the entire
record and reach an independent determination of the volunta-
riness of the defendant's statements; the trial court's ruling
will be affirmed unless it is clearly erroneous, such that the
Court of Appeals has a definite and firm conviction that a
mistake has been made.

2. CRIMINAL LAW — CONFESSIONS — VOLUNTARY STATEMENTS.

A determination regarding the voluntariness of a confession is to
be made from all of the facts and circumstances, including the

REFERENCES

Am Jur 2d, Evidence §§ 529, 543 et seq.

Sufficiency of showing that voluntariness of confession or admission
was affected by alcohol or other drugs. 25 ALR4th 419.

Constitutional aspects of procedure for determining voluntariness of
pretrial confession. 1 ALR3d 1251.

duration of detention, the manifest attitude of the police toward the suspect, the physical and mental state of the suspect, and the pressures which may sap or sustain the suspect's powers of resistance and self-control.

3. CRIMINAL LAW — CUSTODIAL INTERROGATION.
   Custody, for the purpose of determining whether there has been custodial interrogation by the police, occurs when a person is deprived of freedom in a meaningful way, under the totality of the circumstances; the key question is whether the defendant could reasonably believe that he was not free to leave.

4. CRIMINAL LAW — CONFESSIONS — DRUG USE.
   The fact that a person is drugged does not per se render a statement involuntary; the voluntariness of a confession depends upon all of the circumstances.

5. CRIMINAL LAW — CONFESSIONS — POLYGRAPH EXAMINATIONS.
   The fact that a criminal defendant has been given a polygraph examination does not render the defendant's subsequent confession involuntary.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*David M. Dean,* for defendant.

Before: SULLIVAN, P.J., and ALLEN and J. T. KALLMAN,* JJ.

PER CURIAM. Defendant was charged with first-degree criminal sexual conduct. Following a *Walker* [*People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965)] hearing in the St. Clair Circuit Court, the court granted defendant's motion to suppress written inculpatory statements he made following a polygraph examination, in which he admitted to having penetrated the five-year-old victim's vagina with his finger. The statement was suppressed on the basis of involuntari-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ness. The people appeal by leave granted. We reverse.

On appeal from a *Walker* hearing, we are required to examine the entire record and reach an independent determination of the voluntariness of the defendant's statements. *People v Catey,* 135 Mich App 714; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985). We will affirm the trial court's ruling unless it is clearly erroneous, such that we have a definite and firm conviction that a mistake has been made. *People v Price,* 112 Mich App 791; 317 NW2d 249 (1982), lv den 414 Mich 946 (1982).

The voluntariness of a confession must be determined from all of the facts and circumstances, including the duration of detention, the manifest attitude of the police toward the suspect, the physical and mental state of the suspect, and the pressures which may sap or sustain the suspect's powers of resistance and self-control. *People v Belknap,* 146 Mich App 239, 241; 379 NW2d 437 (1985).

The record indicates that the written confession was the product of an interview which followed a polygraph examination voluntarily taken by defendant on December 6, 1984. At the time of the examination, a complaint had been filed by the victim's mother and the investigation focused on defendant, but defendant had not been arrested and he remained at home with his wife.

During the morning of December 6, 1984, Detective Sergeant Gary Teter of the Michigan State Police, with whom defendant had previously discussed the matter, telephoned defendant and requested him to submit to the polygraph examination. Defendant had no objections and agreed to drive with Detective Sergeant Teter to the Madison Heights forensic laboratory for testing.

Defendant thereafter ate a bagel for breakfast at

about 10:00 A.M. and smoked a marijuana cigarette at about 11:00 A.M. to calm his nerves. Teter arrived at defendant's home at about 1:00 P.M. and they proceeded to the laboratory, accompanied by defendant's wife, at defendant's request. Although the polygraph procedure was not discussed during the drive, defendant was familiar with it, having previously taken one in an unrelated matter.

Defendant arrived at the laboratory at about 2:00 P.M., whereupon he was interviewed by Detective Sergeant Christopher Lanfear regarding his personal and health histories. The interview lasted from fifteen to thirty minutes, during which defendant was given his *Miranda* [*Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966)] warnings and was instructed that the exam was voluntary and could be terminated upon his request at any time.

During the interview, defendant said that he had eaten a few hours earlier and that he had smoked marijuana. However, defendant also said that he was not under the influence of marijuana at the time, and it did not appear to Detective Sergeant Lanfear that defendant was affected by the drug. Lanfear noted on his report that the room was sixty-eight degrees with thirty percent humidity at the time of the test. Defendant never complained that he was cold.

Following the pretest interview, between 2:38 and 2:47 P.M., Lanfear discussed the case and read his proposed examination questions to defendant. The men took a break at about 2:50 P.M. Detective Sergeant Lanfear testified that the purpose of the break was to allow defendant to think about the questions and decide whether he still wanted to take the test. During the break, defendant sat with his wife in the waiting room and had access to a restroom and drinking fountain.

The examination ended at approximately 3:25 P.M. Following the examination, Lanfear informed defendant that he had failed the test. Defendant was reread and waived his *Miranda* rights. Lanfear then interviewed defendant again. Defendant initially testified that Lanfear told him that he would stay until midnight if necessary to obtain an admission and that if he confessed, the prosecutor would probably be lenient. However, during cross-examination, defendant suggested that Lanfear had offered to stay as long as defendant wanted or needed to be able to relate his side of the story. Lanfear denied that he threatened defendant or suggested to him that he would keep him at the laboratory until he confessed.

Detective Sergeant Teter testified that defendant was not in custody on December 6, 1984, and was free to leave at any time. Teter, who waited with defendant's wife in a public waiting room during the pretest interview and the examination itself, did not perceive defendant to be cold or under the influence of any narcotic or alcohol. Although defendant appeared to be upset, Teter believed he was coherent and understood the proceedings. Teter also met with defendant after the examination. It was apparently at this time, at approximately 4:30 P.M., that defendant tendered the written statement.

On the other hand, defendant testified that he was cold and needed to use the restroom during the interviews and examination. He attributed his confession to the marijuana intoxication as well as Lanfear's statements. However, defendant conceded that he was not prevented from eating or using the restroom before he left his home that morning, nor did he assert that he had complained about his discomfort while at the laboratory. De-

fendant also admitted that his memory of that afternoon was detailed and crystal clear.

At the close of proofs at the hearing, the court concluded that defendant's motion should be granted. This decision was affirmed at a hearing on the people's motion for reconsideration. Based on the court's statements at the two hearings, it appears that it found the confession to be involuntary for three reasons: (1) because defendant's transportation to the lab in Teter's automobile constituted "constructive custody"; (2) because defendant believed that he was under the influence of marijuana during the polygraph examination; and (3) because Lanfear's interview of defendant was not entirely restricted to Lanfear's assignment as a polygraph operator.

"Custody" occurs when a person is deprived of freedom in a meaningful way, under the totality of the circumstances. The key question is whether the defendant could reasonably believe that he was not free to leave. *People v Blackburn,* 135 Mich App 509, 517-518; 354 NW2d 807 (1984), lv den 422 Mich 907 (1985), cert den sub nom *Michigan v Blackburn,* — US —; 106 S Ct 397; 88 L Ed 2d 349 (1985). In the instant case, defendant acknowledged that he agreed to the polygraph examination and had no objection to driving to it with Detective Sergeant Teter. At the time, defendant was not under arrest or incarcerated. He was picked up at his home, and later apparently returned there. Both detectives testified that defendant was free to discontinue the interviews at any time, and defendant was so advised. Defendant never claimed that he misunderstood his freedom or that he believed he could not leave. Under the circumstances, we find no basis for the circuit court's conclusion that defendant was in "constructive custody." Nonetheless, even if defendant was

in custody, the detectives repeatedly complied with their obligation to inform him of his *Miranda* rights. This factor does not support the conclusion that defendant's statement was not freely given.

We also find to be error the lower court's (and defendant's) reliance on defendant's consumption of one marijuana cigarette to conclude that his statement was involuntary. The fact that a person is drugged does not per se render a statement involuntary. Rather, as stated, the voluntariness of the confession depends upon all of the circumstances. *People v Dunlap,* 82 Mich App 171, 176; 266 NW2d 637 (1978).

While the trial court's findings regarding credibility are entitled to deference, *People v Shelson,* 150 Mich App 718, 724; 389 NW2d 159 (1986), the trial judge did not find that defendant was under the influence of marijuana at the time of his confession. Rather, at the motion for reconsideration, the court merely remarked that the defendant *believed* that the marijuana influenced the polygraph examination. The court did not indicate to what extent defendant was actually influenced by the marijuana, or whether the influence affected his volition rather than the outcome of the polygraph. In view of all the testimony, it is most difficult to conclude that defendant's capacities were impaired by the marijuana. He only smoked one marijuana cigarette approximately 5½ hours before giving his written confession, and there was no evidence that the marijuana was unusually potent. Defendant exhibited no signs of disorientation during the afternoon and, at the hearing, he admitted that he remembered the event and his statements in great detail. Under the totality of the circumstances we conclude that the statement was not induced by marijuana intoxication.

The circuit court also ruled that the use of the polygraph examination impugned the validity of the confession. Contrary to this belief, both this Court and the United States Supreme Court have held that polygraph examinations do not render subsequent confessions involuntary. *Wyrick v Fields,* 459 US 42, 47-49; 103 S Ct 394; 74 L Ed 2d 214 (1982); *People v Hangsleben,* 86 Mich App 718, 726; 273 NW2d 539 (1978); *People v Garrison,* 128 Mich App 640, 644; 341 NW2d 170 (1983), lv den 419 Mich 853 (1984). In this case, where defendant was given *Miranda* warnings prior to both the test and the subsequent interview and the facts do not otherwise indicate that the confession was coerced, we are left with a firm and definite conviction that the court erred in suppressing the statement. *Garrison, supra,* at 644.

Reversed and remanded.