PEOPLE v LEIGHTY

Docket No. 77849. Submitted January 8, 1987, at Lansing. Decided
July 20, 1987. Leave to appeal applied for.

Vicki Marie Leighty was convicted of possession with intent to
deliver 225 or more grams of cocaine and was sentenced to
from twenty to thirty years in prison, Saginaw Circuit Court,
Gary R. McDonald, J. Defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in finding the statements made
by defendant and relied upon to support a search warrant
pursuant to which the cocaine was found to be voluntary.

2. Defendant's assertion that the cocaine should have been
suppressed because the affidavit supporting the search warrant
contained deliberately or recklessly false statements is without
merit.

3. The prosecutor's comments during closing argument do not
require reversal since the comments were not objected to and a
curative instruction could have eliminated their unduly preju-
dicial effect.

4. The court did not err in denying defendant's request for an
instruction on possession of less than fifty grams of cocaine.
The facts did not warrant the instruction.

5. The court did not err in denying defendant's request for an
instruction on the misdemeanor offense of unlawful use of
cocaine. There was no dispute that defendant was in fact in
possession of the cocaine. An instruction on a lesser included
misdemeanor should not be required where there is no dispute

REFERENCES

Am Jur 2d, Appeal and Error, §§ 624 *et seq.*

Am Jur 2d, Evidence, §§ 439, 529, 543 *et seq.*

Am Jur 2d, Trial §§ 876 *et seq.*

Lesser-related state offense instructions: modern status. 50 ALR4th
1081.

Modern status of law regarding cure of error, in instruction as to
one offense, by conviction of higher or lesser offense. 15 ALR4th
118.

Mental subnormality of accused as affecting voluntariness or admis-
sibility of confession. 8 ALR4th 16.

as to the elements separating the misdemeanor from the felony on which the jury is to be instructed.

6. The court did not err in imposing sentence and the sentence does not constitute cruel or unusual punishment.

Affirmed.

1. EVIDENCE — *WALKER* HEARINGS — APPEAL.

The Court of Appeals is required, on appeal from a trial court's ruling in a *Walker* hearing, to examine the entire record and reach an independent determination of the voluntariness of the defendant's statement; the trial court's ruling will be affirmed unless it is clearly erroneous, such that the Court of Appeals has a definite and firm conviction that a mistake has been made.

2. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS.

A determination regarding the voluntariness of a confession is to be made from all of the facts and circumstances, including the duration of detention, the manifest attitude of the police toward the suspect, the physical and mental state of the suspect, and the pressures which may sap or sustain the suspect's powers of resistance and self-control.

3. CRIMINAL LAW — CONSTITUTIONAL LAW — *MIRANDA* RIGHTS — WAIVER — INTOXICATION — VOLUNTARINESS.

Advanced intoxication may preclude the effective waiver of *Miranda* rights; however, the fact that a person was under the influence of drugs is not dispositive of the issue of voluntariness of any statements.

4. SEARCHES AND SEIZURES — AFFIDAVITS — INTENTIONALLY FALSE STATEMENTS.

Suppression of evidence discovered pursuant to a search warrant is required even if the affidavit remains valid after excising an erroneous statement where the statement was intentionally false or given with reckless disregard for the truth.

5. CRIMINAL LAW — ARGUMENT OF COUNSEL — PRESERVING QUESTION.

Appellate review of a prosecutor's closing argument is precluded in the absence of objection unless failure to consider the issue would result in a miscarriage of justice; a remark which could be seen as improper if standing alone is not a basis for reversal when any unduly prejudicial effect could have been eliminated by a curative instruction had one been requested in a timely objection.

6. CONTROLLED SUBSTANCES — LESSER INCLUDED OFFENSES — POSSESSION — DELIVERY.

Possession of a controlled substance is a cognate offense rather than a necessarily lesser included offense of the offense of delivery of the controlled substance.

7. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

Refusal to give a requested instruction on a necessarily included lesser offense where the evidence supports a conviction on the greater offense constitutes error requiring reversal; instructions on cognate offenses are required only where the evidence supports the instructions.

8. CRIMINAL LAW — JURY INSTRUCTIONS — MISDEMEANORS.

The conditions for an instruction on a lesser included misdemeanor offense in a trial for a felony are that there be a proper request specifying the offense, an appropriate inherent relationship between the offense charged and the misdemeanor, a rational basis supported by evidence adduced at trial which would justify conviction of the misdemeanor, adequate notice to the defendant where the prosecution requests the instruction that the misdemeanor is one of the charges against which he is expected to defend, and no undue confusion or other injustice as a result of the instructions; an instruction on a lesser included misdemeanor should not be required where there is no dispute as to the elements separating the misdemeanor from the felony on which the jury is to be instructed.

9. CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES — HABITUAL CRIMINALS.

Habitual criminals are to be given indeterminate sentences, wherein the minimum sentence does not exceed two-thirds of the maximum sentence (MCL 769.10; MSA 28.1082).

10. CONTROLLED SUBSTANCES — PENALTIES — CRUEL AND UNUSUAL PUNISHMENT.

The penalty provision for a conviction under the controlled substances portion of the Public Health Code does not constitute cruel or unusual punishment (US Const, Am VIII; Const 1963, art 21, § 16; MCL 333.7403; MSA 14.15[1403]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Christopher S. Boyd,* Prosecuting Attorney, and *Mitzi L. McPeck,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Richard B. Ginsberg*), for defendant on appeal.

Before: Hood, P.J., and Beasley and L. Townsend,* JJ.

Per Curiam. Defendant appeals as of right from her jury trial conviction for possession with intent to deliver 225 or more grams of cocaine, MCL 333.7403(2)(a)(ii); MSA 14.15(7403)(2)(a)(ii). She was sentenced to from twenty to thirty years imprisonment pursuant to the statute. This appeal raises six claims of error, none of which we find meritorious. We thus affirm defendant's conviction and sentence.

Defendant was arrested at the Saginaw County Jail just after she concluded visitation with her boyfriend, Tony Restrepo, who had been arrested earlier in possession of nearly two pounds of cocaine. Restrepo had been arrested for supplying cocaine to Kathy Baugh, who identified defendant as the person with Restrepo on the night he supplied Baugh with cocaine. Based on these facts, the police waited for defendant to visit Restrepo in order to arrest her for her involvement in supplying cocaine to Baugh. However, at the time of her arrest cocaine was found in her purse and a subsequent search of her rented car resulted in discovery of 536 grams of cocaine which gave rise to the charge for which she was convicted.

Defendant first asserts that the trial judge erred in denying her motion for a new trial on the grounds that the discovery of the cocaine in her car was the fruit of an unlawful search. Defendant was arrested by Officer James Dankert of the Saginaw Township Police Department. After waiv-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

ing her *Miranda*[1] rights, she was interrogated by Dankert and FBI Special Agent Ben Walker. On the basis of information garnered during defendant's interrogation, Officer Dankert impounded defendant's car and sought a search warrant. When defendant's car was searched, a total of 536 grams of eighty-nine percent pure cocaine was found.

Following defendant's posttrial *Walker*[2] hearing, the trial judge ruled that defendant had knowingly and intelligently waived her *Miranda* rights when questioned by police and that her statements made to police officers could be used to support a search warrant. He also found that, even without defendant's incriminating statements, the search warrant affidavit was sufficient to justify a search of defendant's car. Finally, he concluded that defendant's statements were not induced by a promise of leniency.

Recently, in *People v Lumley,* 154 Mich App 618, 620; 398 NW2d 474 (1986), this Court succinctly reiterated the applicable appellate review standard:

> On appeal from a *Walker* hearing, we are required to examine the entire record and reach an independent determination of the voluntariness of the defendant's statements. *People v Catey,* 135 Mich App 714; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985). We will affirm the trial court's ruling unless it is clearly erroneous, such that we have a definite and firm conviction that a mistake has been made. *People v Price,* 112 Mich App 791; 317 NW2d 249 (1982), lv den 414 Mich 946 (1982).
> The voluntariness of a confession must be deter-

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

mined from all of the facts and circumstances, including the duration of detention, the manifest attitude of the police toward the suspect, the physical and mental state of the suspect, and the pressures which may sap or sustain the suspect's powers of resistance and self-control. *People v Belknap,* 146 Mich App 239, 241; 379 NW2d 437 (1985).

Defendant argues that her statements were involuntary because in the days immediately preceding her arrest she had freebased substantial quantities of cocaine, which seriously influenced her judgment. At the evidentiary hearing the detective and the FBI agent who questioned defendant testified that, while they thought she was a cocaine user, she was coherent and responded in a normal way and her demeanor was not that of a person so narcotized as to be unable to knowingly waive her rights and make a voluntary confession. She waived her rights in writing, signing both the waiver and the acknowledgment without difficulty. Dr. Michael Abramsky, a psychologist testifying for the defense about the effects of cocaine on the brain, opined that at the time of her arrest defendant's judgment would have been impaired due to her consumption of cocaine. However, cocaine is primarily a mood-altering, not a mind-altering, drug and he could not be certain whether the effects of the cocaine would have worn off to the point where she could function normally again at the time of her arrest or her statements.

Defendant herself testified that she was able to carry out most normal activities. She had great recall during interrogation of the events preceding her arrest, as well as of the incident 2½ months earlier when her boyfriend sold cocaine to Kathy Baugh. However, defendant was evasive at the

"proper" points. She did not want to talk about Restrepo or incriminate him.

We are not left with a definite and firm conviction that the trial court erred in finding defendant's statement voluntary. When interviewed, defendant appeared normal until she was asked to consent to a search of her car. Although she broke down at this point after about two hours of interrogation, significantly, she was able to exercise her judgment and refused to consent to the search. Additionally, she understood that she was under arrest and attempted to bargain with police. After being told that she was being less than truthful, she responded, "I am trying to cooperate, but you haven't promised me a fucking thing."

While advanced intoxication from drugs or alcohol may preclude an effective waiver of *Miranda* rights, *People v Davis,* 102 Mich App 403, 410; 301 NW2d 871 (1980), the fact that a person was narcotized or under the influence of drugs is not dispositive of the issue of voluntariness. *People v Lumley, supra,* p 624; *People v Prast (On Rehearing),* 114 Mich App 469, 483-485; 319 NW2d 627 (1982). The trial judge's ruling that the statements were voluntary was not erroneous. Further, the trial judge's holding that no promises were made to defendant in return for her statements is supported by the FBI agent's testimony that he informed defendant that neither he nor the detective could extend any type of promise to defendant although the court would be informed of her cooperation if her statements proved truthful. Obviously, defendant did not consider that any promises had been made to her, as during her interview she stated that she was trying to cooperate but had not been promised anything in return. Thus, defendant's suggestion that there were promises of leniency is without merit.

Defendant's assertion that the cocaine seized from her car should have been suppressed because the warrant affidavit contained deliberately or recklessly false statements is also without merit. Defendant contends that the following statement in the affidavit was false:

> Leighty further admitted to Dankert that Antonio Restrepo had requested that she, Leighty, pick up money from drug transactions at several locations about the time of her return recently to Saginaw, and that said money was in a car rented by her from Redmond's Car Rental of Saginaw that day, which car Detective Dankert found parked outside the county jail, and is a 1981 Chevette as described above.

According to defendant, the statement was false because, although Dankert testified that defendant informed him she was picking up drug money at Restrepo's request, she later recanted the statement. Further, although she informed Dankert that she had $1,000 in her car and that that was all the money she had, because that amount of money was discovered following the search of her motel room the police had no reason to believe defendant's car contained any money.

While it is true that suppression of evidence discovered pursuant to a search warrant is required even if the affidavit remains valid after excising an erroneous statement when the statement was intentionally false or given with reckless disregard for the truth, *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978); *People v Howey,* 118 Mich App 431, 434-435; 325 NW2d 451 (1982), lv den 418 Mich 882 (1983), there is no evidence suggesting such in this case. Defendant inconsistently stated at different times during the interrogation that all of her belongings

were in her car and that she had only $1,000 to
her name (which the police had already discovered
in her motel room) even though she had previously
made the statement following the request to
search her car that she could not get $50,000 to
replace "it." These contradictory statements by
defendant preclude the conclusion that the com-
plained-of statement in the affidavit was intention-
ally false or made with reckless disregard for the
truth.

Defendant also argues that her statement to the
effect that she was dead if the police searched her
car since she could not come up with the $50,000
to replace "it" was illegally obtained by question-
ing her after she had requested counsel and thus
was improperly used in the affidavit. However,
although the testimony of Officer Dankert and
Special Agent Walker is inconsistent with regard
to when defendant requested counsel, they both
testified that defendant's request occurred after
she had made the statement. Thus, defendant's
argument is without merit.

More importantly, the trial court found that the
affidavit established probable cause to search de-
fendant's car even absent all of the statements
obtained from defendant during her interrogation.
We agree that the other statements in the affida-
vit, that defendant had sold cocaine on a previous
occasion to Kathy Baugh, that she associated with
Restropo, who was arrested with 1½ pounds of
eighty percent pure cocaine, and that when defen-
dant was arrested police found cocaine in her
purse, provided probable cause to issue the search
warrant to search defendant's automobile even
without the complained-of statement. See *People v
Williams,* 134 Mich App 639, 643-644; 351 NW2d
878 (1984). The trial court did not err in declining
to suppress the evidence on the basis of the war-

rant affidavit. In summary, none of defendant's arguments support suppression of the cocaine seized in the search of her vehicle.

Defendant next argues that the prosecutor's remarks in closing argument regarding the credibility of her expert witness, Dr. Demoethenes Lorandos, who testified regarding her insanity-diminished capacity defense, which was based upon "cocaine personality dysfunction," constituted error. At trial, Dr. Lorandos opined that, at the time defendant was arrested, she was mentally ill and lacked the capacity to conform her conduct to the requirements of the law. On cross-examination, the prosecutor confronted the doctor with paragraph two of his written report, in which he stated:

> Vicki does not show overt personality pathology, organic brain dysfunction and [shows] no indications of significant disorder of thought or mood so as to find her mentally ill and/or legally not responsible.

The doctor explained that this conclusion was based on his interview with defendant on November 25, 1983, over four months after defendant's arrest. He stated that, had he been asked to render a written opinion regarding defendant's mental condition at the time of her arrest, his report would have been completely different both in its stylistic format and in its conclusion.

Further, Dr. Lorandos denied receiving an order of referral from the court directing him to examine defendant. He maintained his examination was only for "case planning" purposes. He flatly denied that he had changed his opinion on the issue of defendant's criminal responsibility from the time he had filed his written report.

During his closing argument, the prosecutor vehemently argued that the jury should find Dr. Lorandos' testimony lacked credibility because he had changed his opinion at trial from that stated in his written report. In addition, he attacked the doctor's professionalism, stating:

> He simply switched his testimony, and he didn't even have the professionalism to amend his report and file it with attorneys for both parties.

In response, defense counsel argued that Dr. Lorandos' trial testimony should be believed because he was putting his professional reputation on the line by testifying under oath and because the doctor would not have purposefully risked the harm to his professional reputation by stating one opinion in a written report and another at trial. Nonetheless, during his rebuttal argument, the prosecutor continued pounding at the doctor's credibility and, significantly, at his professionalism, stating:

> But the bottom line is this: you choose to give credibility at all to an individual who would change his testimony and not have the professionalism to write a report and file it with the parties.
>
> *   *   *
>
> I mean, it seemed obvious to everyone that the doctor simply had decided to change his testimony. And yet on the witness stand, would the doctor simply say to you, "all right, I decided to change my testimony"?
>
> No, he came up with this, I respectfully suggest, preposterous statement to you, that when he said that she was criminally responsible, and not mentally ill, in his report, he meant at the time of the evaluation. He actually tried to put that one over on you. He wanted you to believe that.

* * *

It ought to bother you, ladies and gentlemen of the jury, that a professional who has two degrees and a Ph.D., wouldn't have the basic professional courtesy to change the report and file it. Wouldn't have the basic professionalism to tell you on the witness stand, "I have just decided to change my testimony," instead of trying to make you believe that somehow the opinion on the criminal responsibility had to do with something other than the date of the alleged offense.

Defendant did not object to any of the statements.

While we think that the prosecutor's argument was improper and bordered on misconduct, we hold that, absent an objection at trial, it does not mandate reversal of defendant's conviction. Generally failure to object to the prosecutor's closing argument forecloses appellate review absent manifest injustice. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977). A remark which could be seen as improper if standing alone, is not a basis for reversal when any unduly prejudicial effect could have been eliminated by a curative instruction had one been requested in a timely objection. A well tried, vigorously argued case should not be overturned due to isolated improper remarks which could have been cured by an instruction had one been requested. *Id.,* p 17. Additionally, remarks by the prosecutor in response to statements made by defense counsel do not constitute error requiring reversal. *People v Dersa,* 42 Mich App 522, 527; 202 NW2d 334 (1972), lv den 388 Mich 803 (1972); *Duncan, supra.*

In this case the prosecutor did go beyond the argument that Dr. Lorandos was not credible and attacked his professionalism. While the prosecutor could argue that because Dr. Lorandos' opinion at trial differed from his opinion expressed in the

report he should not be believed, the prosecutor should not have argued that Dr. Lorandos was unprofessional since he changed his opinion and would not admit it and that, therefore, he should not be believed. The former is based on the evidence; the latter is a personal attack. *People v Tyson,* 423 Mich 357, 376; 377 NW2d 738 (1985). Nonetheless, the error could have been corrected by a timely objection and cautionary instruction.

Defendant's cited cases, *People v Tyson, supra, People v Williams,* 218 Mich 697; 188 NW2d 413 (1922), and *People v Cowles,* 246 Mich 429; 224 NW2d 387 (1929), are all distinguishable by the presence of such a timely objection. Moreover, the errors in both *Tyson* and *Williams* were of a more egregious nature than that in the present case and were not remotely based on the trial evidence nor even arguably in response to defense counsel's argument as is the case here. Thus, while the prosecutor would be well advised in the future to confine his remarks to the evidence, reversal is not required.

Defendant also claims that the trial judge erred in denying her request to instruct the jury on possession of less than 50 grams of cocaine, CJI 12:3:00. Defendant was charged with possession with intent to deliver 225 grams or more of cocaine and the trial court instructed on that crime, as well as on possession of between 225 and 650 grams of cocaine and on possession of between 50 and 225 grams of cocaine. Defendant was found guilty, as charged, of possession with intent to deliver 225 grams or more of cocaine.

At trial it was undisputed that there were 536 grams of cocaine found in defendant's car; one package contained 470 grams of eighty-nine percent pure cocaine and another package contained 66 grams of eighty-seven percent pure cocaine.

Possession of cocaine is a cognate offense rather than a necessarily included lesser offense of the offense of delivery of cocaine. *People v Steele,* 150 Mich App 728, 741; 389 NW2d 164 (1986). The distinction is important because the refusal to give a requested instruction on a necessarily included lesser offense when the evidence supports a conviction on the greater charge constitutes error requiring reversal. *People v Ora Jones,* 395 Mich 379, 390; 236 NW2d 461 (1975). Cognate offenses share several elements with and are related to the higher offense but also contain some elements not found in the higher offense. *Id.,* p 387. Unlike necessarily included lesser offenses, instructions on cognate offenses are required only when supported by the evidence. *Id.,* p 390.

The trial judge properly refused the requested instruction because defendant did not dispute the fact that she possessed 536 grams of cocaine. Rather, her defense at trial was insanity or diminished capacity. To convict defendant of the included offense of possession of less than 50 grams of cocaine, the jury would have had to believe that the actual amount of cocaine found in defendant's car was less than ten percent of what was testified to at trial. Simply put, the evidence did not support the instruction. *People v Ora Jones, supra.*

Defendant's claim that the trial judge erred in denying her request to instruct the jury on the misdemeanor offense of unlawful use of cocaine, CJI 12:4:01, fails for similar reasons. The judge declined to give the requested instruction because he found that there was no dispute that the defendant was in fact in possession of cocaine for her own use. This was not error.

In *People v Stephens,* 416 Mich 252; 330 NW2d 675 (1982), our Supreme Court modified its decision in *People v Chamblis,* 395 Mich 408; 236

NW2d 473 (1975), reh den 396 Mich 976 (1976), which prohibited misdemeanor lesser-included and cognate instructions in cases where the defendant was charged with a felony punishable by in excess of two years imprisonment. Instead, the Court ruled, a misdemeanor instruction was permissible if the following conditions were met: (1) there must be a proper request; (2) there must be an appropriate relationship between the charged offense and the requested misdemeanor; (3) the requested misdemeanor instruction must be supported by a rational view of the evidence adduced at trial; (4) if the prosecutor requests the instruction, the defendant must have adequate notice of it; and (5) requested instructions must not result in undue confusion or some other injustice. In this case it is the third condition that defendant cannot meet. As noted in *Stephens, supra,* pp 262-263:

> The third condition is that the requested misdemeanor must be supported by a rational view of the evidence adduced at trial. This means that not only must there be some evidence which would justify conviction of a lesser offense, but that "proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense."

All of the elements of possession of cocaine were admitted during defendant's testimony. On the facts in this case, an instruction on use was not supported by the evidence. It is true that defendant was charged with the offense of delivery of cocaine and that, if only presented with delivery or use instructions, the jury could have found defendant innocent of the former offense. However, this fact does not require a use instruction

since defendant virtually admitted all of the elements of possession during her testimony.

On the present facts, to only look at the charged offense and requested misdemeanor instruction without considering the other lesser-included offense that was to be given, i.e., possession, would unnecessarily penalize the prosecutor for risking a charge on the higher offense, delivery, when a possession conviction was virtually a certainty. Stated otherwise, a misdemeanor instruction should not be required when there is no dispute as to the elements separating the misdemeanor from the felony on which the jury is to be instructed. Since the judge instructed the jury on the offense of possession of cocaine and since there was no dispute as to the element separating the offense of possession from that of use, that is, that defendant possessed cocaine, the judge properly refused defendant's requested instruction on use of a controlled substance.

We also disagree with defendant's contention that, in sentencing her to a twenty- to thirty-year term of imprisonment, the judge erred in believing that he had no discretion in imposing the maximum sentence of thirty years. MCL 769.9(3); MSA 28.1081(3) provides:

> In cases involving a major controlled substance offense for which the court is directed by law to impose a sentence which cannot be less than a specified term of years nor more than a specified term of years, the court in imposing the sentence shall fix the length of both the minimum and maximum sentence within those specified limits, in terms of years or fraction thereof, *and the sentence so imposed shall be considered an indeterminate sentence.* [Emphasis added.]

In *People v Tanner,* 387 Mich 683; 199 NW2d 202

(1972), our Supreme Court held that, in imposing an indeterminate sentence, the minimum sentence may not exceed two-thirds of the maximum sentence. To hold otherwise, the Court held, would frustrate the purpose of indeterminate sentencing. 387 Mich 689-690. In *People v Stevens,* 138 Mich App 438, 443; 360 NW2d 216 (1984), this Court held, pursuant to MCL 769.10; MSA 28.1082, "that the sentences of [defendants] convicted as habitual offenders are to be indeterminate as that term was defined in *Tanner."* Since the language of MCL 769.10; MSA 28.1082 is virtually identical to MCL 769.9(3); MSA 28.1081(3), and since the statute under which defendant was sentenced imposed a mandatory twenty-year minimum sentence, the trial judge had no discretion but to impose a thirty-year maximum sentence in order to comply with *Tanner.*

Defendant recognizes MCL 769.9(3); MSA 28.1081(3) but argues the following language from *Tanner* is controlling:

> [Our] holding has no application to sentencing under statutes by which the only punishment prescribed is imprisonment for life, or those providing for a mandatory minimum. [387 Mich 690. See, MCL 769.9; MSA 28.1081.]

Defendant also distinguishes *People v Stevens, supra,* on its facts, arguing that the two-thirds rule is only applicable to those cases in which it works to the benefit of a defendant. In *Stevens,* this Court remanded for resentencing, finding defendant's five- to six-year term violated *Tanner's* two-thirds rule. Finally, defendant cites *People v Francisco Perez,* 417 Mich 1100.21 (1983), a memorandum opinion in which our Supreme Court stated:

> Pursuant to GCR 1963, 853.2(4), in lieu of grant-

ing leave to appeal, the case is remanded on September 21, 1983, to the Saginaw Circuit Court for resentencing. Under MCL 769.9(3); MSA 28.1081(3), the statutory minimum and *maximum* sentences for major controlled substances offenses are not mandatory except insofar as they establish the outer limits within which a sentence must be fixed. In all other respects, relief is denied. [Emphasis added.]

Defendant's authorities are not controlling. First, after *Tanner* was released, MCL 769.9; MSA 28.1081 was amended to add the third subsection. Since the Legislature had the benefit of the *Tanner* opinion at the time it enacted the amendment, the amendment is controlling. Second, defendant has cited no authority in support of her contention that indeterminate sentencing applies only when it would benefit a defendant. The rationale behind *Tanner* is the same regardless of whether indeterminate sentencing is a benefit or a detriment to a defendant.

Moreover, *People v Perez* is distinguishable. There, defendant pled guilty to possession with intent to deliver more than fifty grams of heroin and was sentenced to from ten- to twenty-years imprisonment (*People v Perez,* unpublished memorandum opinion of the Court of Appeals, decided December 1, 1982 [Docket No. 58583]). Thus, the sentencing judge could have imposed any sentence within the ten- to twenty-year range, provided the sentence complied with the *Tanner* two-third rule.

In the present case the situation is different, since the penalty imposed by law for defendant's conviction, twenty to thirty years imprisonment, is also in strict compliance with *Tanner.* Any other sentence in the twenty- to thirty-year range would violate *Tanner.* Defendant's argument to the contrary is without merit.

Finally, defendant argues that her sentence constitutes cruel and unusual punishment. However, this Court has consistently ruled that the mandatory sentencing provisions of MCL 333.7403; MSA 14.15(7403) are not unconstitutional. *People v Tate,* 134 Mich App 682, 693; 352 NW2d 297 (1984); *People v Harman,* 124 Mich App 93, 98-100; 333 NW2d 591 (1983), lv den 417 Mich 1100.45 (1983); *People v Kaigler,* 116 Mich App 567, 572-573; 323 NW2d 486 (1982). Defendant's lack of prior convictions notwithstanding, her sentence does not amount to cruel or unusual punishment. Defendant's conviction and sentence is affirmed.

Affirmed.