*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ZEBADIAH JOSEPH SORIANO,

      Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 359165
Grand Traverse Circuit Court
LC No. 20-013669-FH

Before: SWARTZLE, P.J., and SERVITTO and GARRETT, JJ.

GARRETT, J. (*concurring in part and dissenting in part*).

"Intoxication from alcohol or other substances can affect the validity of a waiver of Fifth Amendment rights," *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005), and should be assessed by any officer before interrogating a suspect. In this case, a sheriff's deputy interrogated defendant, Zebadiah Joseph Soriano, in a hospital emergency room while Soriano was strapped to a restraint chair. The intoxicating effects of the lysergic acid diethylamide (LSD) Soriano had taken were weakening, but he was still so under the influence that he could not knowingly, intelligently, and voluntarily waive his rights. I would hold that the trial court erred in denying Soriano's motion to suppress his statements at the hospital. That error was not harmless, in my opinion, and remand is required for a new trial without the subject evidence. Accordingly, I must dissent from the majority opinion in this regard.[1]

## I. RELEVANT FACTS

At approximately 4 a.m. on November 21, 2020, officers responded to a report of a man—Soriano—who "left a residence on foot and was believed to be under the influence of drugs and experiencing some hallucination-type behavior." The officers found Soriano at approximately 5:30 a.m. He "was naked from the waist down" and "was definitely experiencing some sort of

---

[1] I do not challenge the remainder of the majority opinion. In my opinion, however, the improper admission of Soriano's hospital statements demands a new trial, rendering consideration of the remaining appellate issues unnecessary.

hallucinations and [was] clearly under the influence of some sort of drug." The officers handcuffed Soriano, placed him in a patrol vehicle, and transported him to a local emergency room. Grand Traverse Sheriff's Deputy Mike Ruggles claimed that in the hour Soriano remained in the hospital, Soriano "was slowly able to come down" from the substances he had taken, stopped making nonsensical statements, and sat still without making "erratic movements."

According to Deputy Ruggles, Soriano eventually expressed confusion about how he came to be at the hospital. The deputy "recall[ed] him indicating that he wanted to talk to me." Their conversation began at approximately 6:40 a.m. Deputy Ruggles asserted "it was becoming more and more apparent to [Soriano] that he was at a hospital" and "he was confused after coming down from this euphoria he was experiencing." Deputy Ruggles decided to read Soriano his rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 694; 16 L Ed 2d 694 (1966), and "began [a] conversation with him." According to the deputy, Soriano waived his rights and agreed to answer questions. Soriano advised the deputy he had taken "six acid tablets." Deputy Ruggles described:

> There was many long pauses in his statements, you could tell he was thinking really hard about what was going on. He was realizing the severity of the situation, as he was in a . . . restraint chair. So there wasn't a whole lot of dialog immediately from him.

> I—again I explained why he was there, and then proceeded to ask him specific questions due to him not having much dialog. And he responded with a lot of yes-and-no-type answers.

Soriano stated "out of the blue": "I am a rapist and I am fucked." Deputy Ruggles asked Soriano several follow-up questions. During that time, Deputy Ruggles claimed Soriano no longer "appear[ed] to be hallucinating," and although "his behavior had definitely . . . changed for the better," "you could tell that he was still confused." This interrogation lasted five to 10 minutes, and was interrupted by medical staff. The hospital then released Soriano for transport to the jail. On cross-examination at the suppression hearing, Deputy Ruggles admitted none of the medical staff advised him whether they had analyzed Soriano to determine his level of intoxication. He admitted that "[t]he mere fact that [Soriano] wanted to talk to" him did not "necessarily mean that he would understand his Miranda rights."

Soriano's stepfather, Jason Potes, testified that Deputy Ruggles would not allow him to speak to Soriano in the hospital because "it wouldn't do any good, he's too out of it." Potes reviewed his call log and determined he spoke to Deputy Ruggles at 8:31 a.m., almost two hours after the deputy determined Soriano was sufficiently aware to waive his *Miranda* rights and be interrogated.

Soriano also took the stand at the suppression hearing. Soriano remembered rousing from his hallucinations at the hospital and feeling very confused. He remembered Deputy Ruggles reading him *Miranda* rights, but "[a]t the time I didn't recall as to why I was being asked them, nor understanding why." He remembered speaking to Deputy Ruggles but could not recall any of his statements. Soriano asserted he "didn't fully understand" "some" of the questions and "kind of was just answering at random." Soriano described: "I didn't fully remember what was going

on. So I was kind of just answering from what little I could piece together. But as I said, I was kind of in my own world, so anything could have been going on."

Soriano asserted that he remained impaired for several hours after awaking at the hospital. Soriano described that while under the influence, everything appeared "wavy" and like it was "moving." When Soriano spoke to his parents at 7 p.m., several hours after being transported to the jail, his vision was still affected by the drugs. These sensations were "much more intense" when he awoke in the hospital. Soriano further opined his "judgment would have been clouded" for more than a day. Soriano asserted that during the interrogation, he was in no condition to drive a vehicle, operate power tools, or carry a tray of drinks, let alone waive his constitutional rights and speak to a police officer.

Soriano moved to suppress any statements made to Deputy Ruggles, arguing that his *Miranda* waiver was not knowing and voluntary because of his advanced intoxication from consuming LSD. After considering the above testimony given at the evidentiary hearing, the trial court denied the motion. The court determined Soriano "reached out" to Deputy Ruggles, recognizing him as a police officer. The court found Soriano "was grounded both in time and in place" and "understood that he was being investigated for an alleged sexual assault." The court reasoned that Soriano's "striking statement"—"I am a rapist and I am fucked"—was "a recognition of some level of cognition on the part of the defendant as to the situation that he is in." This statement "shows . . . a level of thought that is not in keeping with someone who is suffering the effects of a hallucinogenic drug." The court also credited Deputy Ruggles's testimony that Soriano's "demeanor changed from one who was suffering from the effects of a hallucinogenic drug . . . to someone who recognized the situation he was in, recognized the location that he was in." The court found Soriano voluntarily sought out the conversation with the deputy and had sufficiently overcome the effects of his intoxication for the waiver of his *Miranda* rights to be knowing and voluntary.

The matter proceeded to trial and Soriano's hospital statements were presented into evidence. The jury convicted Soriano of assault with intent to commit criminal sexual conduct and the court sentenced him to three years' probation with six-months to be served in jail. This appeal followed.

## II. LEGAL PRINCIPLES

We review de novo a trial court's ultimate decision on a motion to suppress, but review underlying factual findings for clear error. *People v Stewart*, 512 Mich 472, 480; 999 NW2d 717 (2023). De novo review "means that we review the issues independently, with no required deference to the trial court." *People v Beck*, 504 Mich 605, 618; 939 NW2d 213 (2019). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Stewart*, 512 Mich at 480.

"[T]he accused must be given a series of warnings before being subjected to 'custodial interrogation' in order to protect his constitutional privilege against self-incrimination." *People v Tanner*, 496 Mich 199, 207; 853 NW2d 653 (2014), citing *Miranda*, 384 US at 444-445, 477-479. Questioning is deemed "custodial interrogation" when it involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his

freedom of action in any significant way." *Miranda*, 384 US at 444. Before a custodial interrogation, the accused "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. After the suspect is provided with the required warnings, he may waive his *Miranda* rights, so long as the waiver is knowing, intelligent, and voluntary. *Tanner*, 496 Mich at 209.

There are "two distinct dimensions" of the inquiry when reviewing the validity of a *Miranda* waiver—whether the waiver was voluntary, and whether it was knowing and intelligent. *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986). The *Moran* Court explained:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*Id*. (quotation marks and citation omitted).]

Put differently, "whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion," and whether it was "knowing and intelligent requires an inquiry into the suspect's level of understanding, irrespective of police behavior." *People v Daoud*, 462 Mich 621, 635-636; 614 NW2d 152 (2000). To establish a knowing and intelligent waiver, the prosecution must prove by a preponderance of the evidence "that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *People v Cheatham*, 453 Mich 1, 27, 29; 551 NW2d 355 (1996). "Intoxication from alcohol or other substances can affect the validity of a waiver of Fifth Amendment rights, but is not dispositive." *Tierney*, 266 Mich App at 707. See also *People v Leighty*, 161 Mich App 565, 571; 411 NW2d 778 (1987) ("[A]dvanced intoxication from drugs or alcohol may preclude an effective waiver of *Miranda* rights . . . .").[2]

### III. ANALYSIS

### A. SUPPRESSION OF STATEMENTS

Considering the totality of the circumstances, I would conclude that the court erred in denying Soriano's motion to suppress, thereby his Fifth Amendment rights. At the time of the interrogation, Soriano had just stopped hallucinating after taking six doses of LSD. Although the worst of the effects were behind him, Soriano remained extremely intoxicated and unable to

---

[2] Opinions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are generally afforded some deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

comprehend his situation. Despite witnessing Soriano's intoxication over the past hour, Deputy Ruggles made no attempt to determine whether Soriano was capable of knowingly, intelligently, and voluntarily waiving his rights before beginning his interrogation. Further, Deputy Ruggles observed Soriano's difficulty in formulating answers to questions and remarkably brushed it off as "thinking really hard."

A comparison to the facts in *Tierney*, 266 Mich App at 692, is helpful. Officers read the defendant in *Tierney* his *Miranda* rights in his home, just after finding him slumped over the dining room table. Before the officers read these rights, the defendant expressed suicidal ideations. The officers described him "as intoxicated and depressed or suicidal, but not behaving as though he were crazy or mentally ill, or in need of medical assistance." *Id*. One of the officers personally knew the defendant and opined "that, although intoxicated, defendant was capable of carrying on a conversation, able to understand the questions asked of him, and did not appear delusional." *Id*.

This Court determined that although the defendant was intoxicated and suicidal when he waived his rights, the totality of the circumstances revealed he spoke to the officers voluntarily. The defendant was

> a college-educated adult who has experience with the criminal justice system. He was not threatened, harmed, or denied any of the basic necessities he required, including medical care. He was twice advised of his rights. Although intoxicated, defendant was coherent and rational, he understood the questions posed to him and answered them appropriately, and he was able to assist officers in creating a written record of the interview. [*Id*. at 709.]

Further,

> The evidence showed that defendant never appeared to be confused, and several of the officers testified that defendant's intoxication did not interfere with his ability to understand and to answer the questions posed to him. Several of the officers also testified that defendant seemed rational and was not delusional during questioning. [*Id*. at 710.]

In comparison, Soriano was 18 years old at the time of his interrogation and had no prior experience with the criminal justice system. Although he had used LSD before, he had never used such a large quantity. Deputy Ruggles testified that Soriano had stopped hallucinating and making erratic movements. Soriano's continued restraint, however, seems to belie Deputy Ruggles's observations. Soriano did ask to speak to Deputy Ruggles, but it was not because he wanted to be interrogated or to confess. Rather, Soriano did not understand why he was in the hospital and believed the deputy could provide him answers. Deputy Ruggles observed Soriano's long pauses before answering questions. Under the circumstances, it should have been abundantly clear to the deputy that Soriano was still under the influence and was confused. I find Deputy Ruggles's explanation that he believed Soriano was "thinking hard" disingenuous and so contrary to the facts as to be completely unbelievable. My opinion is bolstered by the fact that Deputy Ruggles advised Soriano's parents that he was still too intoxicated to speak to them *two hours after* the interrogation.

In my opinion, Deputy Ruggles was clearly well aware that Soriano was in no condition to knowingly, intelligently, and voluntarily waive his *Miranda* rights and chose to interrogate Soriano anyway. The trial court should have suppressed the statements made by Soriano in the emergency room.

## B. HARMLESS ERROR

The failure to suppress Soriano's statements was not harmless error.

> When a defendant shows preserved, constitutional error, if the error is not a structural defect that defies harmless error analysis, the reviewing court must determine whether the beneficiary of the error has established that it is harmless beyond a reasonable doubt. A constitutional error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. There must be no reasonable possibility that the evidence complained of might have contributed to the conviction. [*People v Hyde*, 285 Mich App 428, 447; 775 NW2d 833 (2009) (cleaned up).]

Here, Soriano has established constitutional error—statements obtained in violation of his Fifth Amendment right against self-incrimination were introduced at his trial. I would further conclude that this error was not harmless beyond a reasonable doubt.

Undoubtedly, there was sufficient evidence without Soriano's statements for the jury to convict him of assault with intent to commit CSC involving penetration. The jury may have still convicted Soriano in the absence of his statements to police. But the harmlessness standard for constitutional error is a high one, and there is a "reasonable possibility" that the erroneously introduced evidence of Soriano's statements contributed to his conviction.

Of import, this case was a credibility contest between two intoxicated individuals. The complainant had also used LSD, and both Soriano and the complainant used marijuana that night as well. Further, Soriano took the stand in his own defense at trial and had to be confronted with the statements he made to Deputy Ruggles, statements he did not remember making.

The prosecutor relied heavily on Soriano's emergency room statements in closing argument, despite that Soriano had no memory of making them. The prosecutor described that Soriano admitted to taking six LSD doses and attempting to have intercourse with the complainant. The prosecutor focused on Soriano's statements that the complainant rejected his advances and yet he touched her "everywhere." And the prosecutor emphasized Soriano's emergency room statement to Deputy Ruggles that he was "a rapist" and was "fucked." The prosecutor accused Soriano of conveniently changing his memories to fit his narrative before trial.

On this record and with the prosecutor's heavy reliance on Soriano's emergency room statements, I do not believe "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent" the improperly admitted statements. *Hyde*, 285 Mich App at 447. Accordingly, I would vacate Soriano's conviction and remand for a new trial without the problematic evidence.


/s/ Kristina Robinson Garrett