# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES LEE HORN,

        Defendant-Appellant.

UNPUBLISHED
December 2, 2014

No. 316757
Genesee Circuit Court
LC No. 12-030550-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MATTHEW ALLEN RISELAY,

        Defendant-Appellant.

No. 317352
Genesee Circuit Court
LC No. 12-030551-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NANCY EDNA JOHNSON,

        Defendant-Appellant.

No. 319816
Genesee Circuit Court
LC No. 12-030932-FC

---

Before: O'CONNELL, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

In **Docket No. 316757**, defendant, James Lee Horn, appeals as of right his jury trial convictions of two counts of second-degree murder, MCL 750.317, carjacking, MCL 750.529a, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the

-1-

commission of a felony (felony-firearm), MCL 750.227b. Horn was sentenced to life in prison for his second-degree murder conviction, 20 years to 40 years' imprisonment for the carjacking conviction, 24 months to 60 months' imprisonment for carrying a concealed weapon, and 2 years' imprisonment for felony-firearm. We affirm.

In **Docket No. 317352**, defendant, Matthew Allen Riselay, appeals as of right his jury trial convictions of first-degree murder, MCL 750.316, carjacking, MCL 750.529a, CCW, MCL 750.227, and felony-firearm, MCL 750.227b. Riselay was sentenced to life in prison without parole for the first-degree murder conviction, 18 years to 40 years' imprisonment for carjacking, 24 months to 60 months' imprisonment for the CCW conviction, and 2 years' imprisonment for the felony-firearm conviction. We affirm.

In **Docket No. 319816**, defendant, Nancy Edna Johnson, appeals by leave granted her jury trial convictions of first-degree murder, MCL 750.316, carjacking, MCL 750.529a, CCW, MCL 750.227, and felony-firearm, MCL 750.227b. *People v Johnson*, unpublished order of the Court of Appeals, entered May 30, 2014 (Docket No. 319816). Johnson was sentenced to life in prison without parole on the first-degree murder conviction, life in prison for the carjacking conviction, 24 months to 60 months' imprisonment for CCW, and 2 years' imprisonment for felony-firearm. We affirm in part and remand in part.

## I. DOCKET NO. 316757

Horn contends that insufficient evidence was adduced at trial to support his convictions for second-degree murder and carjacking of the victim, Leslie Mills, on March 4, 2012. Specifically, Horn argues the absence of any proof or evidence of his intent to satisfy the respective elements for these crimes.

This Court reviews a challenge to the sufficiency of the evidence de novo, *People v Malone*, 287 Mich App 648, 654; 792 NW2d 7 (2010), and is required to view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). "[C]onflicts in the evidence are resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences arising [from the evidence] may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). An appellate court will not interfere with a jury's assessment of the weight of the evidence or the credibility of witnesses. *Dunigan*, 299 Mich App at 582. The Court's review is to be deferential because the trier of fact, and not the appellate court, properly determines what inferences can be fairly drawn from the evidence and the weight to be accorded those inferences. *Malone*, 287 Mich App at 654.

The elements comprising second-degree murder were articulated by this Court in *People v Portellos*, 298 Mich App 431, 443; 827 NW2d 725 (2012):

> The elements of second-degree murder are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. Malice includes the intent to kill, the intent to cause great bodily harm, or the intent to take an action whose natural tendency is to cause death or great bodily

harm, wantonly and willfully disregarding that risk. [Quotation marks and citations omitted.]

Carjacking is addressed by MCL 750.529a. The elements of carjacking have been defined as: (1) the taking of a motor vehicle from another person, (2) in the presence of that person, a passenger, or anyone in lawful possession of the motor vehicle, (3) through the use of either force or violence, the threat of force or violence, or by placing the victim in fear. *People v Davenport*, 230 Mich App 577, 579; 583 NW2d 919 (1998).

A defendant may be vicariously liable on a theory of aiding and abetting. *People v Usher*, 196 Mich App 228, 232-233; 492 NW2d 786 (1992), overruled in part on other grounds by *People v Perry*, 460 Mich 55, 64-65 (1999). The elements of aiding and abetting include:

(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and citations omitted).]

In accordance with MCL 767.39:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

"An aider and abettor's state of mind may be inferred from all the facts and circumstances." *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id*.

Sufficient evidence existed to support Horn's convictions under an aiding and abetting theory. Horn was present in the motel room with Johnson and Riselay when he indicated the need to obtain a ride and Riselay asserted that he could steal a vehicle. The weapon used in the crimes belonged to Horn and he permitted Johnson and Riselay to leave the motel room, in the possession of his weapon, with knowledge they intended to steal a vehicle. Phillip Eason's testimony suggested that Horn provided the weapon to Riselay in lieu of being able to locate a screw driver to use in stealing the vehicle. Eason implied that Johnson owed Horn money for drugs and that procurement of the vehicle would be in exchange either to secure additional drugs or pay off part of her debt. Horn's written statement to the police acknowledged Horn agreeing with Eason's verbal directive to Riselay to steal a vehicle along with responding, "What okay" in response to Riselay's verbal statement he would use the gun to scare the potential victim. Evidence was provided showing that Horn attempted to wipe his fingerprints off the stolen vehicle and was attempting to leave the motel when police arrived and he and the others were taken into custody.

The proofs adduced at trial demonstrated the guilt of Johnson and Riselay in the commission of first-degree murder and carjacking. Horn's convictions were for the lesser included offense of second-degree murder and carjacking under an aiding and abetting theory. Horn does not dispute the establishment of any of the elements for these crimes other than the intent element, which he asserts is lacking. To be convicted under an aiding and abetting theory it need only be shown that "defendant performed acts or gave encouragement that assisted the commission of the crime" and that "the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." *Robinson*, 475 Mich at 6. Horn admitted knowledge that Riselay and Johnson intended to steal a vehicle in response to Horn's verbal assertion that he needed a ride. When Riselay suggested that he could steal a vehicle, Horn did not actively discourage Riselay but rather verbally implied that he should proceed. Horn provided the weapon used by Riselay and Johnson with knowledge of their intent to steal a vehicle and Riselay's specific admission that he would use the weapon to frighten and intimidate a potential victim. The provision of the weapon, with knowledge of its intended use, is sufficient to support Horn's convictions in accordance with MCL 767.39. These acts, coupled with Horn's familiarity with Johnson and Riselay and his attempt, after the crime, to eliminate evidence of his ties to the crime and to flee the motel room were sufficient for the jury to infer Horn's state of mind as an aider and abettor. *Carines*, 460 Mich at 758. "To place the issue of aiding and abetting before the trier of fact, the evidence need only tend to establish that more than one person committed the crime, and that the role of a defendant charged as an aider and abettor amounts to something less than the direct commission of the offense." *People v Wilson*, 196 Mich App 604, 611; 493 NW2d 471 (1992) (citation omitted).

Horn next asserts that insufficient evidence existed to support the trial court's scoring of OVs 5, 6, 7 and 8. Purportedly, the correct scoring of these variables would result in a lower guidelines range necessitating resentencing. He further contends that his trial counsel's failure to object to the scoring of OVs 5 and 6 resulted in his not being afforded the effective assistance of counsel.

To preserve an issue challenging the scoring of the guidelines or challenging the accuracy of information relied on in determining a sentence that is within the appropriate guidelines range, the challenging party is required to raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand. MCL 769.34(10); *People v Jackson*, 487 Mich 783, 795-796; 790 NW2d 340 (2010). Horn's defense counsel objected to the scoring of OVs 7, 8, 13, 14 and 19 at sentencing, preserving this aspect of the issue for appellate review. Because objections were not raised to the scoring of OV 5 and OV 6, they are not properly preserved for appellate review. To preserve a claim for ineffective assistance of counsel a defendant is required, in the trial court, to move for a new trial or an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). Because Horn has failed to seek a new trial or evidentiary hearing, his claim that he was denied the effective assistance of counsel is not preserved for appellate review.

In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court elucidated the applicable standard of review for sentencing guidelines scoring, as follows:

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citations omitted.]

Questions of constitutional law are generally reviewed de novo. *People v Harper*, 479 Mich 599, 610; 739 NW2d 523 (2007). Unpreserved claims of constitutional error are reviewed for plain error. *Carines*, 460 Mich at 764. Whether a defendant received the effective assistance of counsel comprises a mixed question of fact and law. A "trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). A trial court's factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). "Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

The challenged offense variables were scored by the trial court for the crime of second-degree murder as follows: (a) OV 5 – 15 points, (b) OV 6 – 50 points, (c) OV 7 – 50 points, and (d) OV 8 – 15 points. This resulted in a total OV score of 180 and an OV level of III. The recommended sentence was 270 months to 450 months or life.

Scoring of OV 5 relates to "psychological injury to a member of [a] victim's family." MCL 777.35. Fifteen points are scored on this variable for "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). In accordance with MCL 777.35(2), "In making this determination, the fact that treatment has not been sought is not conclusive."

The victim's husband, Kevin Mills, spoke at Horn's sentencing. Sentencing factors need only be proven by a preponderance of the evidence. *People v Wiggins*, 289 Mich App 126, 128; 795 NW2d 232 (2010). Mills described the significant loss experienced by friends and family due to her murder. Mills asserted that he and other family and friends experienced "surprise" and "shock" and were "appall[ed]" by "the events that proceeded to occur during and following the carjacking murder of Leslie." Mills noted that his wife was shot "four times, twice in the back." The victim was "[p]ushed from her car and left to die in the pool of her own blood. Leslie was alone and scared when she was dying." Mills referenced his wife's voice on the "9-1-1 tapes telling the gas station attendant trying to help her that one of the bullets had hit one of her arteries" and her death in the ambulance before arrival as the hospital. Mills chastised the failure of the perpetrators to take any action or to "do anything in any way to help Leslie. Instead they left her cold, alone, scared and knowing in the pool of her own blood to die." Mills described the actions of Horn and the others as "heinous." Given the cruel and malevolent nature of the crime, it requires little inference from this factual record to conclude that Kevin Mills suffered trauma and psychological distress not only because of the loss of his wife but also due to the horrific manner and the pain she experienced leading to her death in addition to her distress in knowing she would imminently die from the extensive loss of blood. As such, we find that the record

contains sufficient evidence to support the scoring of this variable and to affirm the trial court's decision. *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009). In addition, even if this Court were to determine that the trial court erred in the scoring of OV 5, Horn would not be entitled to resentencing as the alteration of the scoring on this variable would not change his appropriate guidelines range. See *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Horn also challenges the trial court's scoring of 50 points on OV 6. Offense variable 6 pertains to an "offender's intent to kill or injure another individual." MCL 777.36. Scoring is governed by MCL 777.36, which provides, in relevant part:

> (1) Offense variable 6 is the offender's intent to kill or injure another individual. Score offense variable 6 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> (a) The *offender had premeditated intent to kill or the killing was committed while committing or attempting to commit* arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, *robbery*, breaking and entering of a dwelling, home invasion in the first or second degree, *larceny of any kind*, extortion, or kidnapping or the killing was the murder of a peace officer or a corrections officer                     50 points

In this instance, the victim was shot and killed by Johnson and Riselay in the course of committing a carjacking, which is defined by statute as "a larceny of a motor vehicle." MCL 750.529a(1). As such, the assignment of 50 points for OV 6 is consistent with the directive of MCL 777.36(1)(a) and does not comprise error.

Horn also contends the trial court erred in scoring 50 points for OV 7. MCL 777.37(1)(a) provides that 50 points are to be scored when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." The trial court scored 50 points based on its determination that the victim in this matter, Leslie Mills, was treated with excessive brutality. As discussed by our Supreme Court in *Hardy*, 494 Mich at 443-444:

> [A] defendant's conduct does not have to be "similarly egregious" to "sadism, torture, or excessive brutality" for OV 7 to be scored at 50 points, and that, absent an express statutory prohibition, courts may consider circumstances inherently present in the crime when scoring OV 7. The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount.

The record demonstrates that the victim was shot four times in the closely confined area of her vehicle. The victim suffered severe injuries and copious bleeding and was pushed out of her vehicle and left on an asphalt parking lot to die. The victim was keenly aware of her condition and imminent death based on her expression of pain and difficulty breathing. Based on the use

of the weapon to actually inflict a life threatening injury to the victim rather than to simply intimidate, coupled with the absence of any concern for the victim as demonstrated by pushing her from the vehicle and leaving her to bleed to death, sufficient evidence existed to support the trial court's assessment of 50 points for OV 7 as the conduct exhibited by the perpetrators "was designed to substantially increase the victim's fear beyond the usual level that accompanies a carjacking." *Id.* at 445. However, as discussed by this Court in *People v Hunt*, 290 Mich App 317, 325-326; 810 NW2d 588 (2010), Horn was not physically present during the "commission of the crimes here" and there is no demonstration that he committed, engaged in or "encourage[d] others to commit acts constituting 'sadism, torture, or excessive brutality' under OV 7." Unlike some other offense variables, "OV 7 does not state that '[i]n multiple offender cases, if 1 offender is assessed points for [the applicable behavior or result], all offenders shall be assessed the same number of points.' " *Id.* at 326, citing MCL 777.31(2)(b), MCL 777.32(2), MCL 777.33(2)(a). "For OV 7, only the defendant's actual participation should be scored." *Id.* Based on the absence of any record evidence that Horn's actions qualified as "sadism, torture, or excessive brutality" under OV 7, scoring by the trial court on this variable was in error.

Horn further contends error by the trial court in the assignment of 15 points for OV 8, which addresses "victim asportation or captivity." MCL 777.38. A court is required to assess 15 points for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). "A place of greater danger includes an isolated location where criminal activities might avoid detection," and each person who was placed in danger of injury or loss of life should be counted as a victim. *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013); MCL 777.38(2)(a). Although asportation does not require the use of force, it does necessitate some movement of the victim beyond that "incidental to committing [the] underlying offense."

Evidence existed that the victim was moved or asported by Johnson. The victim was initially parked at the gas pumps but was moved and left on the ground in the front of the store. The trial court concurred with the reasoning for the prosecutor's request of the scoring of this variable finding the movement of the victim and ejection from the vehicle "increased her chance of death." Specifically, the trial court opined, "I do agree that she was murdered and it was probably a more dangerous situation after they got over there." While the victim in this matter was not moved to a place of greater seclusion, the movement of the victim and the callous disposal of her body onto the pavement while profusely bleeding and given the severity of her wounds no doubt enhanced the level of threat to the victim's well-being and comprised a "place of greater danger" or "a situation of greater danger." MCL 777.38(1)(1). However, Horn was not present when the asportation of the victim occurred. Similar to the language of OV 7, because OV 8 does not contain language requiring multiple offenders to be scored in a similar manner, the same reasoning as delineated in *Hunt* should be employed, resulting in a conclusion that the trial court incorrectly scored 15 points for this offense variable. *Hunt*, 290 Mich App at 326.

Despite error by the trial court in the scoring of OVs 7 and 8, Horn is not entitled to resentencing as the alteration of the scoring of these variables would not change his appropriate guidelines range. See *Francisco*, 474 Mich at 89 n 8.

On appeal, Horn further contends that the failure of his trial counsel to object to the scoring of OVs 5 and 6 constituted the ineffective assistance of counsel. Criminal defendants have a recognized right to the effective assistance of counsel under the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). To establish ineffective assistance of counsel, a defendant is required to demonstrate that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *Lockett*, 295 Mich App at 187. Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *Vaughn*, 491 Mich at 670. There is also a strong presumption that counsel's assistance comprised sound trial strategy. *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Decisions pertaining to what evidence to present and what issues to raise during closing argument are presumed to constitute matters of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Based on a determination that the scoring of the variables was supported by record evidence and that even if an error in scoring did occur it would not necessitate reversal or resentencing, Horn's related claim of ineffective assistance of counsel must be rejected because defense counsel is not required to make meritless objections. *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005).

For his final issue on appeal, Horn asserts error by the trial court by improperly scoring various offense variables based on judicial fact finding in violation of *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), attempting to bolster or elevate his contention of errors in sentencing.

To preserve an issue challenging the scoring of the guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines range, the challenging party is required to raise the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand. MCL 769.34(10); *Jackson*, 487 Mich at 795-796. To preserve a constitutional challenge for appellate review, a defendant must first raise the issue in the trial court. *People v Hogan*, 225 Mich App 431, 438; 571 NW2d 737 (1997). Defense counsel did not object to the scoring of OVs 5 and 6. Although defense counsel did object to the scoring of OVs 7, 8, 14, and 19, defense counsel did not state a basis for the objection and no reference was made to *Alleyne*. The issue is not properly preserved for appellate review.

A sentencing court's factual determinations must be supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438. Preserved issues of constitutional law are reviewed de novo. *Harper*, 479 Mich at 610. Unpreserved claims of constitutional error are reviewed for plain error. *Carines*, 460 Mich at 764. A plain error affected a defendant's substantial rights if the error affected the outcome of the proceedings. *Vaughn*, 491 Mich at 665. "Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). Reversal is warranted only "when the plain, forfeited error

resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings. . . ." *Id.* (quotation omitted).

Having determined that record evidence supported the trial court's scoring determinations on OVs 5, 6, 7, and 8, Horn's suggestion of judicial fact-finding when assessing points for these variables is without merit and need not be readdressed. Horn also challenges the absence of record evidence to support the trial court's scoring of OVs 14 and 19, which were each assigned 10 points by the trial court. MCL 777.44(1)(a) provides that OV 14 is to be scored at 10 points if the offender was "a leader in a multiple offender situation." More than one offender can be a leader. MCL 777.44(2)(b). In addition, "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). In scoring this variable, the trial court found Horn to be an "instigator in this matter" based on his provision of the weapon and initiating the events through indicating his desire to obtain "a ride." Contrary to Horn's assertion, the trial court's assessment of points on this variable was substantially supported by testimony and evidence on the record, including Horn's own admission that the gun was his and that the actions of Johnson and Riselay initiated with Horn's desire to obtain a ride. Horn's integral role in inspiring Johnson and Riselay to steal a vehicle and use a weapon were directly attributable to Horn. Because the facts relied on by the trial court in the assessment of points on this variable were based on the record evidence, Horn's contention that it was premised on judicial fact-finding is without merit.

The trial court also assessed 10 points for OV 19. MCL 777.49. This variable is to be scored at 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). In accordance with *People v Barbee*, 470 Mich 283, 287; 681 NW2d 348 (2004):

> Obstruction of justice is a well-known term of art. . . . [C]onduct that "interfered with or attempted to interfere with the administration of justice" does not have to necessarily rise to the level of a chargeable offense because it is merely being used as one of various factors to determine a defendant's sentencing guidelines range.

The trial court assessed 10 points on OV 19 in this matter premised on Horn's attempt to obliterate his fingerprints from the stolen vehicle and was in the process of leaving the motel area. First, and contrary to Horn's assertion, record evidence existed for the trial court's assessment of points on this factor and it was not attributable to judicial fact-finding. Second, the propriety of the scoring is consistent with our Supreme Court's determination that "[t]he investigation of crime is critical to the administration of justice," such that '[c]onduct that occurs before criminal charges are filed can form the basis for interference, or attempted interference, with the administration of justice, and OV 19 may be scored for this conduct where applicable." *Barbee*, 470 Mich at 288.

Adequate record evidence existed to support the trial court's assessment of points on the challenged offense variables. Because Horn's contention that the scoring of the variables was the result of improper judicial fact-finding is without merit, his subsequent argument regarding the applicability of *Alleyne* cannot be maintained. Further, defendant's reliance on *Alleyne* is misplaced because the Supreme Court expressly held that the ruling "does not mean that any fact

that influences judicial discretion must be found by a jury." *Alleyne*, 133 S Ct at 2163. This Court has determined that the decision in *Alleyne* does not implicate Michigan's sentencing scheme because "judicial fact-finding within the context of Michigan's sentencing guidelines [is] not used to establish the mandatory minimum floor of a sentencing range." *People v Herron*, 303 Mich App 392, 403; 845 NW2d 533 (2013), appeal held in abeyance 846 NW2d 924 (2014). The decision in *Herron* is currently binding on this Court and must be followed. MCR 7.215(J)(1); see also *People v Lockridge*, 304 Mich App 278, 284; 849 NW2d 388 (2014), lv gtd 496 Mich 852 (2014).

## II. DOCKET NO. 371352

Riselay contends error by the trial court in the provision of an instruction to the jury on flight and a commensurate rejection of his request for an instruction on abandonment. This Court reviews claims of instructional error de novo. *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998). When a claim of instructional error is properly preserved, this Court reviews "for an abuse of discretion a trial court's determination that a specific instruction" applies or does not apply to the facts of record. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011).

The trial court declined to provide an instruction on abandonment. It did provide the following instruction on flight to Riselay's jury:

> There has been some evidence that the defendant tried to run or flee after the alleged crime. This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake or fear. However, a person may also run or hide because of a consciousness of guilt. You must decide whether the evidence is true and if true whether it shows the defendant had a guilty state of mind.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (quotation marks and citation omitted). Jury instructions are reviewed as a whole to determine whether error requiring reversal occurred. *Bartlett*, 231 Mich App at 143. Even if found to be somewhat imperfect, jury instructions do not qualify as erroneous if they fairly present to the jury the issues to be tried and sufficiently protected a defendant's rights. *People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001); *Bartlett*, 231 Mich App at 143-144.

Riselay contends that he was entitled to an instruction on abandonment because his theory of the case was that he abandoned or relinquished the crime before it was committed. "Abandonment is an affirmative defense, and the burden is on the defendant to establish by a preponderance of the evidence voluntary and complete abandonment of a criminal purpose." *People v Cross*, 187 Mich App 204, 206; 466 NW2d 368 (1991). The defense of abandonment is not appropriate in a situation where the defendant "fails to complete the attempted crime because of unanticipated difficulties, unexpected resistance, or circumstances that increase the probability of . . . apprehension." *Id.* Abandonment by a defendant is construed to be "voluntary" when it is the "result of repentance or a genuine change of heart." *Id.* However, a defendant is not entitled to the defense if his or her motivation for withdrawal was simply premised on a fear of arrest, a

-10-

realization that an "essential instrumentality to complete the crime" was absent or lacking "or for some other reason could not successfully proceed," or the "criminal endeavor" was merely subject to postponement "until a better opportunity" arose. *Id*. at 206-207 (citation omitted).

In the circumstances and facts presented the trial court's refusal to provide an instruction on abandonment did not comprise error because there is no evidence that Riselay abandoned the commission of the crimes before they were initiated. Riselay suggested stealing a car and took a weapon with the intent of scaring a potential victim. While there may have been some evidence of hesitation or uncertainty between Johnson and Riselay regarding where to initiate their criminal enterprise, the evidence adduced from the victim's own statements and those of Johnson demonstrate that Riselay was present in approaching the victim, the attempt to secure the vehicle and the first discharge of the weapon. Even Riselay, in his second statement to police acknowledged that he only walked away from the criminal enterprise *after* the discharge of the weapon and because he did not want to be part of the robbery. As such, other than Riselay's own self-serving statements, the evidence was substantial to demonstrate that Riselay did not terminate his involvement in the events because of a change of heart or repentance. Rather, Riselay abandoned the enterprise only when it became unexpectedly difficult and the risk of arrest increased. As such, the trial court's refusal to provide an instruction on abandonment did not comprise error.

Riselay further contends error in the trial court's provision of the instruction on flight. "It is well established in Michigan law that evidence of flight is admissible." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Flight evidence is probative to "indicate consciousness of guilt." *Id*. Flight has been defined to include actions such as "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*.

Record evidence existed to support the inclusion of this jury instruction. Riselay left the scene of the carjacking after the firing of the initial shot but before removal of the vehicle from the gas station parking lot. There was some evidence that although Riselay returned to the motel, he haunted the outskirts of the room and parking area and left before the police effectuated arrests. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses[.]" *People v Odom*, 276 Mich App 407, 419; 740 NW2d 557 (2007). All of Riselay's actions support an inference that he was seeking to avoid detection and capture by the police. Riselay's voluntary relinquishment of himself to the police the following day did not preclude the provision of the flight instruction as resisting arrest or attempting to escape custody merely comprise examples of flight behavior, not definitive elements. See *Coleman*, 210 Mich App at 4.

Further, even if it were to be found that the instruction was given in error, the provision of the instruction was not outcome determinative. *People v Lukity*, 460 Mich 484, 493-494; 596 NW2d 607 (1999). The jury heard the testimony and evidence and it is presumed to have understood the instruction, which denoted that the purported flight evidence did not necessarily prove guilt, and that persons could run or hide for innocent reasons. See *People v Dennis*, 464 Mich 567, 581; 628 NW2d 502 (2001). There is nothing to suggest that the jury placed too much weight on the evidence or the instruction, in light of the eyewitness testimony and evidence. As such, provision of the instruction does not comprise an abuse of discretion. *Lukity*, 460 Mich at 493-494.

Riselay also contends that he was deprived of the effective assistance of counsel by his attorney's failure to seek to suppress his statement to police.

To preserve a claim of ineffective assistance of counsel, the defendant must move, in the trial court, for a new trial or an evidentiary hearing. *Payne*, 285 Mich App at 188. Because Riselay did not move for a new trial or evidentiary hearing, the issue is not preserved for appellate review. "Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *Lockett*, 295 Mich App at 186.

Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20; *Cronic*, 466 US at 654; *Vaughn*, 491 Mich at 669. To establish that a defendant's trial counsel was ineffective, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 US at 688. Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *Vaughn*, 491 Mich at 670. There is a strong presumption that counsel's assistance constitutes sound trial strategy. *Armstrong*, 490 Mich at 290. Decisions regarding what evidence to present and which issues to raise during closing argument are presumed to be matters of trial strategy. *Russell*, 297 Mich App at 716.

Although Riselay asserts his trial counsel should have moved to suppress his statement to the police, he conveniently ignores and fails to address a basis for the suppression of his statement. "[T]he burden is on the defendant to establish the evidentiary support 'which excludes hypotheses consistent with the view that his trial lawyer represented him adequately.' " *People v Hoag*, 460 Mich 1, 8; 594 NW2d 57 (1999), citing *Ginther*, 390 Mich at 443. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). An appellant also "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *Payne*, 285 Mich App at 195.

Riselay proceeds to assert that, had his statement to the police been suppressed, the only evidence to support his conviction would be the dying declaration of the victim. This oversimplifies and ignores the actual evidence and testimony. Horn, Eason, and Johnson all place Riselay as an integral figure in the events by suggesting the theft of a motor vehicle and placing the weapon used in his hand at various points during the criminal adventure. The victim's dying declaration did serve to corroborate Riselay's presence and participation at the crime scene. Forensic evidence also established that "Riselay could not be excluded as being a potential donor to the minor types from the blood from the .38 special revolver."

Riselay's contention throughout trial was that he was not present and participating, but that he withdrew from the criminal activity. Riselay, along with Horn and Johnson, elected not to testify at trial. The only evidence to support Riselay's theory of the case was his statement to the police in which he asserted presence but not participation and the ultimate abandonment of the criminal activity. Had his counsel sought to preclude the admissibility of his statement, even this minimal evidence would not have been available to support Riselay's defense theory.

Johnson asserts that her confession and waiver of rights was not voluntary due to her intoxicated state and that her counsel was ineffective for failing to seek suppression of her statement. A defendant must challenge the admissibility of a confession in the trial court or the issue is unpreserved. *People v Snider*, 239 Mich App 393, 417; 608 NW2d 502 (2000); *People v Gray*, 45 Mich App 643, 644; 207 NW2d 161 (1973). Because Johnson did not challenge the admissibility of her confession in the trial court, the issue is not properly preserved for appellate review. To preserve a claim of ineffective assistance of counsel, the defendant must move, in the trial court, for a new trial or an evidentiary hearing under *Ginther*. *Payne*, 285 Mich App at 188. Because Johnson did not move for a new trial or evidentiary hearing, the issue is not preserved.

As discussed by this Court in *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) (citations omitted):

> "Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." "We review de novo a trial court's determination that a waiver was knowing, intelligent, and voluntary." However, we review a trial court's factual findings on a motion to suppress for clear error. To the extent we find that constitutional error has occurred, "[w]e review preserved issues of constitutional error to determine whether they are harmless beyond a reasonable doubt." "A constitutional error is harmless if [it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A trial court's findings of fact are reviewed for clear error and the questions of constitutional law are reviewed de novo. *Id.* "Unpreserved issues concerning ineffective assistance of counsel are reviewed for errors apparent on the record." *Lockett*, 295 Mich App at 186.

"A criminal defendant enjoys safeguards against involuntary self-incrimination during custodial interrogations." *Henry*, 305 Mich App at 145, citing *Michigan v Mosley*, 423 US 96, 99-100; 96 S Ct 321; 46 L Ed 2d 313 (1975); *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). "A statement obtained from a defendant during a custodial interrogation is admissible only if the defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003), citing *Miranda*, 384 US at 444. The following nonexhaustive list of factors is to be considered in making this determination, although no one factor is deemed to be dispositive:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured,

intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*Akins*, 259 Mich App at 564, quoting *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

"[T]he prosecution has the burden of establishing a valid waiver by a preponderance of the evidence." *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000). An effective waiver of *Miranda* is comprised of two elements. " 'First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Id*. at 633, quoting *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986). Hence, it is only when the "totality of the circumstances" surrounding the statement demonstrates "both an uncoerced choice and the requisite level of comprehension" that a court may find valid waiver of *Miranda* rights. *Daoud*, 462 Mich at 633, quoting *Moran*. A court must inquire into all of the circumstances surrounding the interrogation, including evaluating the defendant's age, background, education, experience, and intelligence, to determine whether he or she has the capacity to understand the *Miranda* warnings explained, and the consequences of waiving those rights. *Id*. at 634, quoting *Fare v Michael C*, 442 US 707, 725; 99 S Ct 2560; 61 L Ed 2d 197 (1979). Although whether a waiver is knowing and intelligent depends in part on the suspect's capacity, an examination of the conduct of the police must also be undertaken to determine whether a suspect's statement is voluntary. *People v Tierney*, 266 Mich App 687, 707; 703 NW2 204 (2005).

Based on the transcript of Johnson's statement to police there appears to be no suspect or alerting circumstances suggesting that her statement to police was not voluntary. Johnson was read each of her rights under *Miranda* and acknowledged her comprehension of each right presented. The waiver form was also reviewed in detail with her. She was told on multiple occasions that she had the right to refuse to speak and informed that she could elect to "stop talking whenever you want to." The police officers conducting the interview left the room on more than one occasion, affording Johnson the opportunity to decline to continue the discussion upon their return. Johnson suggests that evidence of her use of drugs earlier in the day or evening of the criminal event precluded her ability to voluntarily and knowingly waive her rights. Advanced intoxication from drugs or alcohol can result in an ineffective waiver of rights under *Miranda*. *People v Leighty*, 161 Mich App 565, 571; 411 NW2d 778 (1987). However, intoxication alone is not dispositive, as the voluntariness of the confession depends on all of the attendant circumstances. *Id*.; *People v Lumley*, 154 Mich App 618, 620, 624; 398 NW2d 474 (1986). Based on the transcript of the proceedings, which Johnson does not suggest to be an inaccurate recordation of the various verbal exchanges between her and the police, there is no evidence that Johnson's statement or confession was either coerced or impacted by her earlier ingestion of illegal substances. Eason's testimony also indicated that Johnson was alert and functioning in the motel room before leaving to secure a vehicle for Horn. Johnson returned driving a vehicle. She was capable of parking the vehicle, returning the weapon to Horn and speaking of the events that had transpired. Johnson also changed her clothing and left the motel room with the others to enter the van that arrived. In sum, the evidence demonstrated that Johnson understood her actions, could maintain a conversation and that her speech was clear and

understandable belying a level of intoxication that precluded a knowing and intelligent waiver and statement to the police.

Johnson further suggests that her counsel was ineffective for failing to obtain a suppression of her statement to the police. Johnson fails to elucidate the basis for the suppression of her statement other than the effect of her voluntary intoxication. As recognized in *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001):

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it.

Further, Johnson's ingestion of an unknown quantity of illegal substances at some time before the criminal event and hours before her arrest and confession is insufficient to support her assertion that her interactions and statements with the police were involuntary; particularly in light of the clear understanding demonstrated in her responses to questions and conversation and her acknowledged comprehension following the provision of each of her rights in accordance with *Miranda*. Consequently, Johnson has failed to demonstrate a basis for suppression of these statements and counsel cannot be deemed to be ineffective for failing to assert or pursue a meritless position. *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

Johnson also infers that, without her confession, there would have been a high probability of her acquittal. It is difficult not to construe this statement as disingenuous. Eason's testimony places her at the motel, with the weapon and accompanying Riselay to seek a vehicle to steal. Eason also identified Johnson as returning to the motel driving the victim's car. The victim, before dying, indicated she had been assaulted by a white woman and man. The victim's vehicle was traced and located, with OnStar, almost immediately following the carjacking. The vehicle was parked at a motel where Johnson rented a room. Clothing belonging to Johnson was obtained from the motel room covered in the victim's blood. The victim's blood was also found on the doorframe of Johnson's motel room. Hence, even without Johnson's statement, sufficient evidence existed to support her convictions.

Johnson also challenges the trial court's admission of testimony by police officers of statements made by the victim at the scene and immediately preceding her death. Johnson specifically contends that the absence of proof that the victim was aware of her imminent death precluded admission of the statements as a dying declaration and asserts the testimony comprised inadmissible hearsay.

"This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). A trial court's decision to admit or exclude evidence "will be affirmed in the absence of a clear abuse of discretion." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). A trial court abuses its discretion when its decision is outside the range of principled outcomes. *Id*. This Court reviews de novo the trial court's rulings on preliminary questions of law regarding the

admissibility of evidence, such as the application of a statute or rule of evidence. *Lukity*, 460 Mich at 488.

"Before admitting a statement as a dying declaration, the trial court must make a preliminary investigation of the facts and circumstances surrounding the statement." *People v Stamper*, 480 Mich 1, 4; 742 NW2d 607 (2007). The statement may be admitted as substantive evidence if it is demonstrated that (1) "the declarant is unavailable as a witness," (2) "the statement was made 'while believing that the declarant's death was imminent,' " and (3) the statement " 'concern[ed] the cause or circumstances of what the declarant believed to be impending death.' " *Id.*, quoting MRE 804(b)(2). In accordance with this exception, a court may admit as substantive evidence hearsay statements concerning the cause or circumstances of the declarant's impending death if the surrounding circumstances clearly establish that the declarant was in extremis and believed that his death was imminent. *Stamper*, 480 Mich at 4.

Johnson contends that the victim's statement does not qualify under the exception because she did not verbally indicate knowledge that her death was imminent. In *People v Siler*, 171 Mich App 246, 251; 429 NW2d 865 (1988), superseded in part on other grounds as stated in *People v Orr*, 275 Mich App 587; 739 NW2d 385 (2007), this Court discussed the requirement that the declarant be aware of his or her impending death in order for a statement to qualify as a dying declaration. Specifically:

> "Consciousness of death" requires, first, that it be established that the declarant was in fact in extremis at the time the statement was made and, secondly, that the decedent believed his death was impending. But, it is not necessary for the declarant to have actually stated that he knew he was dying in order for the statement to be admissible as a dying declaration. [*Id.*]

In the circumstances of this case, the victim expired in the ambulance on the way to the hospital following her injury. She was discovered on the asphalt outside the gas station store bleeding profusely. The victim was observed to be in obvious distress; holding her leg area, groaning in pain, gasping for air, and in and out of consciousness. The responding police officers indicated the severe condition of the victim based on the amount of blood observed at the scene, motivating one of the responding officers to request the ambulance "step it up." The medical examiner confirmed that the victim's injury would cause "extensive hemorrhage" and "would result in a lot of blood loss very quickly," which would result in death within an hour. Given the victim's behavior at the scene, coupled with the obvious pain and extreme loss of blood, her failure to definitively provide a verbal acknowledgement that she was dying is not dispositive. Because it was clearly demonstrated that the victim was *in extremis* and would have believed her death was not merely likely but imminent, the trial court did not err in admitting the statement of police officers relating verbal communications by the victim. *Siler*, 171 Mich App at 251.

Johnson further implies that without the victim's dying declaration, insufficient proof was adduced to sustain her conviction. Contrary to Johnson's contention, more than sufficient evidence existed without the dying declaration for her conviction of these crimes. She was placed at the motel with the weapon used in the carjacking. She accompanied Riselay out of the motel to steal a vehicle. She returned to the motel with the victim's vehicle and covered in the

victim's blood. Because other evidence was presented to support that Johnson was a perpetrator of the events, the dying declaration by the victim, identifying her assailants as a white female and male, was cumulative. Hence, any error in the admission of the statements was harmless. *People v Gursky*, 486 Mich 596, 619-620; 786 NW2d 579 (2010).

Next, Johnson argues that the trial court erred in permitting the prosecutor to present testimony from an unendorsed witness at trial. She contends the late endorsement of this witness improperly bolstered the testimony of another police officer, and impliedly deprived her of a right to present a defense.

This Court reviews for an abuse of discretion the trial court's decision to permit or deny the late endorsement of an expert witness. *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). Although the trial court has discretion to permit or deny the late endorsement of a witness, preclusion of a witness is an extreme sanction "and should be limited to only the most egregious cases." *Id.* "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (citation omitted). A preserved error is grounds for reversal only if it affirmatively appears that it is "more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 496.

In general, this Court reviews de novo whether the defendant was deprived of his constitutional right to present a defense. *Steele*, 283 Mich App at 480. However, because Johnson did not raise this specific issue before the trial court, this issue is unpreserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Unpreserved issues are reviewed for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763-764. An error is plain if it is clear or obvious. *Id.* at 764. An error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id.*

MCR 6.201(A)(1) provides that a party shall provide "the names and addresses of all lay and expert witnesses" and must make the witnesses available for the other party to interview. This rule also provides "the witness list may be amended without leave of the court no later than 28 days before trial." MCL 767.40a(3) requires the prosecution to send to the defendant, "[n]ot less than 30 days" before trial, a list of the witnesses the prosecution intends to produce at trial. However, MCL 767.40a(4) permits the prosecution to endorse a witness "at any time upon leave of the court and for good cause shown or by stipulation of the parties."

The prosecutor originally sought the belated endorsement of Detective Rick Pinter to testify regarding evidence procured from the scene. Most of the referenced evidence was, however, admitted through the testimony of other officers. On the second day of trial, Pinter was called as a witness and his testimony comprised approximately five pages out of a five to six day trial. He testified that he was called in to the scene and was a participant in the second interview with Johnson. He identified the recording of Johnson's police interview and the written statement she generated at the conclusion of the interview. After this testimony, the prosecutor moved for admission of the recording of the interview and the statement. Johnson's counsel did not object. Detective Alex Minto, who was present with Pinter for Johnson's interview, also testified and indicated that he recorded the conversation with Johnson.

A trial court is permitted to exercise its discretion in designing a remedy for a prosecutor's failure to comply with MCL 767.40a. *People v Williams*, 188 Mich App 54, 58-59; 469 NW2d 4 (1991). In designing a remedy, "there must be a fair balancing of the interests of the courts, the public, and the parties. . . ." *People v Taylor*, 159 Mich App 468, 487; 406 NW2d 859 (1987). A defendant is not automatically entitled to the "exclusion of otherwise admissible evidence." *People v Paris*, 166 Mich App 276, 281; 420 NW2d 184 (1988). Instead, "the exclusion of otherwise admissible evidence is a remedy which should follow only in the most egregious cases." *Taylor*, 159 Mich App at 487. "Mere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved." *People v Callon*, 256 Mich App 312, 328; 662 NW2d 501 (2003). Further, to establish that the trial court abused its discretion in deciding to permit the prosecution to add witnesses at trial, a defendant must demonstrate that the court's ruling resulted in prejudice. *Id.*

Given the brevity of his testimony and the admission of most of the evidence through other endorsed witnesses, there does not appear to have been "good cause" demonstrated for the late endorsement of this witness. MCL 767.40a(4). However, the trial court afforded defense counsel time to review documents and prepare for the testimony and cross-examination of the witness. "Where the trial court adopts procedures to guarantee defendant adequate time to prepare and defendant fails to articulate any prejudice due to the late [e]ndorsement, allowing a late [e]ndorsement is not an abuse of discretion." *People v Heard*, 178 Mich App 692, 696; 444 NW2d 542 (1989). Further, the prosecution's late endorsement of Pinter did not serve to prejudice Johnson. Pinter's testimony was extremely brief and merely corroborated his presence for Johnson's statement. He did not discuss or disclose the content of that statement, which was actually provided verbatim to the jury. As such, the late endorsement of this witness cannot be construed to be an egregious case necessitating the extreme sanction of precluding the testimony and the trial court's decision to permit the witness to testify was not an abuse of discretion.

Johnson further implies that permitting Pinter to testify negatively affected her right to present a defense by improperly bolstering the testimony of another witness. "A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses." *Yost*, 278 Mich App at 379. This right is not, however, absolute. *Id.* A defendant is still required to comply with procedural and evidentiary rules when presenting his or her defense. *Id.* Johnson fails to explain how Pinter's testimony bolstered the testimony of Detective Randy Kimes as the testimony did not overlap in any manner, with Pinter's only reference to Kimes comprising an acknowledgment that Kimes was present for Johnson's first recorded interview. Further, although Johnson contends that her defense strategy was somehow compromised because it was premised on the witnesses listed by the prosecution, she fails to elaborate how the inclusion of Pinter's abbreviated testimony precluded her presentation of a defense. In fact, she does not even suggest that Pinter's testimony should have been omitted. Rather she argues only that the trial court should have permitted a continuance rather than a short delay to permit preparation for the testimony. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]" *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Johnson further asserts that her right to a fair trial was compromised by statements made by the trial judge suggesting a "close friendship" with police and control of the prosecutor's schedule. To preserve a claim of judicial misconduct a defendant is required to object to the

-18-

behavior in the trial court. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Because Johnson did not object to the above statements they are not preserved for appellate review.

This Court reviews claims of judicial misconduct to determine whether the trial judge's statements evidenced partiality that could have prejudiced the jury against the defendant. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). This Court reviews the record as a whole, and may not take portions of the record out of context. *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995). An unpreserved challenge to a trial court's conduct is reviewed for plain error affecting a defendant's substantial rights. *Carines*, 460 Mich at 763-764; *People v Conley*, 270 Mich App 301, 305; 715 NW2d 377 (2006).

The exchanges deemed unacceptable by Johnson are comprised of the following. With regard to Kimes, it was noted at the beginning of his testimony that he had come to court after having just completed a 14 hour shift. After an hour of being on the witness stand, Kimes was excused as a witness and the following comments occurred:

> *Court*: All right. Now are you ready to have him excused?
>
> *Prosecutor*: Yes.
>
> *Court*: I know he needs to – do you get to go home and rest or no?
>
> *Kimes*: Huh?
>
> *Court*: Do you get to rest?
>
> *Kimes*: Rest.
>
> *Prosecutor*: No more questions. Thank you very much Sergeant Kimes and I hope you can get some sleep.
>
> *Kimes*: Thank you.
>
> *Court*: Good luck to you, Randy.

Johnson also takes issue with the following exchange involving the judge following a discussion with counsel regarding the admission of certain photographs into evidence:

> *Court*: All right. Here's what we're gonna do. Those six I'm gonna hold. If you wish to offer them later after further testimony if necessary, fine. But don't you think you want to use them on the Elmo do it for forty-two people?
>
> *Prosecutor*: Well actually I don't, your Honor. I'd kind of like to just pass them through to the jury.
>
> *Court*: Okay. All right.
>
> *Prosecutor*: And if the Court will allow –

-19-

*Court*: I'll allow it. In case you wondered ladies, Rebecca who was here, has had her baby this morning at 12:29. A little girl. So if you were wondering where she is to help us out, she's kind of preoccupied right this moment. We thought she could have a day off.

Okay. Are you gonna do that now? Have you started passing those?

Judicial misconduct is grounds for reversal only if the defendant has been deprived of his or her right to a fair and impartial trial. *Paquette*, 214 Mich App at 340. "A trial court's conduct pierces the veil of judicial impartiality where its conduct or comments unduly influence the jury and thereby deprive the defendant of a fair and impartial trial." *Id*. This Court must also ask whether "this statement was likely to cause the jury to believe that the trial court had any opinion regarding the case." *Id*. at 341. Importantly, "[p]ortions of the record should not be taken out of context in order to show trial court bias against defendant; rather the record should be reviewed as a whole." *Id.*

Johnson has failed to demonstrate bias or prejudice on the part of the trial judge sufficient to overcome the presumption of judicial impartiality. *In re Forfeiture of $1,159,420*, 194 Mich App 134, 151; 486 NW2d 326 (1992). When viewed in context, the trial judge's comments did not relate to the content of testimony, but merely a solicitous comment that the testifying officer had the opportunity to obtain some rest following a prolonged period of time on duty after testifying at trial. There is no suggestion that the trial court's comment was offered to suggest a personal relationship with the witness. Similarly, when attempting to organize exhibits for presentation to the jury, the trial court explained to the jury the reason for the absence of a prosecutor who had previously been in the courtroom at the beginning of trial. Given that the reason for the prosecutor's absence was the delivery of her child, it seems reasonable to infer that the jury had an awareness of her condition and may have been curious regarding her absence. The trial judge's subsequent comment pertaining to the prosecutor being permitted a day off following the birth of her daughter was clearly a lighthearted comment and not suggestive or indicative of any control over the prosecutor's schedule or conduct. Given the context and nature of the challenged comments, Johnson is unable to establish the criteria to demonstrate that "the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *Conley*, 270 Mich App at 308 (quotation marks and citations omitted).

Further, a "curative" instruction can alleviate any prejudicial effect of an improper statement made by a judge during the course of trial. *Unger*, 278 Mich App at 237. As part of the instructions to the jury, the trial court stated that comments or questions by the trial court did not comprise evidence and the jury was not to infer an opinion to the trial court or allow such an impression to influence their determination of the facts. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The instruction provided to the jury was sufficient to alleviate any potential error.

Finally, Johnson challenges the trial court's sentence of life in prison for the crime of carjacking, asserting the sentence exceeded the recommended guidelines and citing the failure of

the trial court to explicate, on the record, its reasons for the upward departure. There is no preservation requirement because the court imposed a sentence more severe than the guideline recommendation. MCL 769.34(7); *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008).

This Court reviews a sentencing court's determination regarding the existence of a particular factor for clear error. *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003). This Court reviews the determination that a factor is objective and verifiable as a matter of law. *Id*. This Court reviews the sentencing court's determination that the objective and verifiable factors present in a case constitute substantial and compelling reasons to depart from the statutory minimum sentence for an abuse of discretion. *Id*.

At sentencing, Johnson and her counsel acquiesced to the accuracy of the presentence report. After Johnson declined to exercise her right of allocution, the trial court proceeded to sentence Johnson to life in prison for the first-degree murder conviction and carjacking. Defense counsel and Johnson failed to raise any objections to the sentences imposed. The minimum guideline range was calculated at 135 months to 225 months. Both co-defendants, Horn and Riselay, were sentenced to 20 years to 40 years' imprisonment and 18 years to 40 years' imprisonment, respectively, for the carjacking convictions.

In accordance with MCL 769.43(3), "A court may depart from the appropriate sentence range established under the sentencing guidelines . . . if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." As explained in *Smith*, 482 Mich at 299-300:

> In interpreting this statutory requirement, the Court has concluded that the reasons relied on must be objective and verifiable. They must be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention. Substantial and compelling reasons for departure exist only in exceptional cases. "In determining whether a sufficient basis exists to justify a departure, the principle of proportionality . . . defines the standard against which the allegedly substantial and compelling reasons in support of departure are to be assessed." For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history. [Citations omitted.]

The guideline range determined for this conviction for Johnson was designated at 135 months to 225 months. The trial court sentenced Johnson to life in prison for the carjacking conviction without any reference or acknowledgement that it was imposing a departure sentence. The record discloses no discussion by the trial court, or counsel, to justify the departure with substantial and compelling reasons as required by MCL 769.34(3). This is not to suggest that substantial and compelling reasons do not exist given the horrific and callous nature of the crime and Johnson's prominent role in the events, but rather recognition that the reasons for a departure have not been addressed or explained. As such, Johnson is entitled to resentencing solely on the carjacking conviction.

We affirm the convictions and sentences in Docket Nos. 316757 and 317352. In Docket No. 319816 we remand to the trial court for explanation or resentencing of Johnson's sentence

for her carjacking conviction only.  The remainder of Johnson's convictions and sentences are affirmed.  We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood