# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TONI ALICIA LILEY,

Defendant-Appellant.

UNPUBLISHED
March 31, 2016

No. 323920
Wayne Circuit Court
LC No. 13-011474-FH

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions of carrying a concealed weapon, MCL 750.227, felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 37 days, time served, for the carrying a concealed weapon and felonious assault convictions and to two years' imprisonment for the felony-firearm conviction. We affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the presentence investigation report.

At approximately 2:40 p.m. on December 7, 2013, the victim, Lannie Dalton, arrived at her boyfriend's home located at 5334 Chene in Detroit, Michigan. Dalton was living at the home with her boyfriend, Leon Tyner, as well as other individuals that Leon rented rooms to. When Dalton entered the home, she greeted a few friends who were in the living room and then observed defendant exiting a bathroom down the hall. Dalton became upset upon seeing defendant because she had previously told defendant not to come to Leon's home. Dalton approached defendant and stated, "Excuse me. Didn't I tell you you cannot be here when I'm here?" In response, defendant lifted up her sweater to reveal a weapon in a holster on her left hip. Defendant then told Dalton that she was going to pistol whip her with the weapon.

Dalton then began to walk out towards the front door where she was followed by defendant. As the women exited the front door, Dalton heard defendant rack the gun and fire it one time into the air. Dalton then turned around and observed defendant about to strike her with the weapon. The women began struggling over the weapon and fell to the ground. As they continued to fight over the weapon, two more shots were fired towards Dalton, but Dalton was able to avoid being struck. The women were eventually separated and defendant drove away from the scene.

-1-

During trial, counsel for defendant did not present any witnesses for defendant. However, Sergeant Detective Nathan Duda of the Detroit Police Department read into the record an interrogation that he conducted with defendant three days after the incident in question. In the interrogation, defendant stated that she was confronted and pushed by Dalton and that she struck Dalton with a glass bottle in response. Defendant then stated that she walked outside to put things away in her trunk and told Dalton that she was going to shoot her with a gun she had in the trunk. According to defendant, a man at the house, Jimmy Tyner, then took the gun from defendant. Defendant stated that she never fired any shots from the gun.

After she was convicted and sentenced, defendant filed a motion for a new trial and resentencing in the trial court. In her brief in support, defendant argued that she was denied her constitutional right to the effective assistance of counsel where her trial attorney failed to properly investigate the charges and procure readily accessible evidence. Defendant also argued that she was entitled to a new trial or evidentiary hearing because her convictions were based upon legally insufficient evidence. Defendant also argued that she was denied due process through acts of prosecutorial misconduct. Finally, defendant argued that the presentence investigation report was incomplete and based upon inaccurate and false information.

The trial court subsequently entered an opinion and order denying defendant's motion. The trial court held that defendant's trial counsel was not ineffective when she chose not to offer evidence that was inadmissible. The trial court also held that there was sufficient evidence for a conviction. The court noted that even if the testimony of Dalton and other eyewitnesses was discounted, defendant's own statement was sufficient for a conviction. The trial court declined to address defendant's argument in regard to the presentence investigation report.

Defendant first argues that she is entitled to a new trial on the basis of newly discovered evidence, ineffective assistance of counsel, and actual innocence. We disagree.

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial on the basis of newly discovered evidence. *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). The ultimate constitutional issue arising from an ineffective assistance of counsel claim is reviewed de novo. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002). Any findings of fact are reviewed for clear error. *Id*. at 583.

Defendant did not raise a claim of actual innocence in the trial court. Therefore it is unpreserved for appeal. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006) ("Appellate review is generally limited to issues raised before and decided by the trial court."). This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to avoid forfeiture of the issue, (1) error must have occurred (2) the error must have been plain, i.e., clear or obvious and (3) the plain error affected the defendant's substantial rights. *Id*. (citation omitted). This third requirement is satisfied if the defendant can demonstrate prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id*. If the defendant satisfied these three requirements, this Court will only grant reversal when the plain error resulted in the conviction of an innocent defendant or "'seriously affected[ed] the fairness, integrity, or public reputation of judicial proceedings'. . . ." *Id*. at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

In order to be entitled to a new trial on the basis of newly discovered evidence, a defendant must meet the following requirements: (1) the evidence itself, not merely its materiality, was newly discovered, (2) the newly discovered evidence was not cumulative, (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial, and (4) the new evidence makes a different result probable on retrial. *Grissom*, 492 Mich at 313 (quoting *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003)). While newly discovered impeachment evidence is generally insufficient to warrant a new trial, this evidence may be grounds for a new trial if it satisfies the four part test set forth in *Cress*. However, "[n]ewly discovered impeachment evidence concerning immaterial or collateral matters cannot satisfy *Cress*. But if it has an exculpatory connection to testimony concerning a material matter and a different result is probable, a new trial is warranted." *Grissom*, 492 Mich at 321.

The purported new evidence that defendant provides consists of three items: (1) an affidavit sworn by Edward Jones, (2) a petition for a personal protection order (PPO) signed by Roy Frank Adler seeking protection from Dalton because she allegedly attacked him with a knife, and (3) defendant's medical records which she claims demonstrate that she was suffering from alcoholism, taking tranquilizers, and suffering from posttraumatic stress disorder (PTSD) and thought disorders at the time she gave her incriminating statement to Duda.

Both Jones's affidavit and Adler's petition are new impeachment evidence. Therefore, in addition to satisfying the four part test set forth in *Cress*, defendant must prove that this evidence has an exculpatory connection to testimony concerning a material matter and that a different result would be probable on retrial. *Id*. Neither the affidavit of Jones nor Adler's petition can satisfy these requirements. Jones's affidavit attempts to impeach the credibility of Dalton by claiming that he has witnessed her "physically attack, bully, and threaten Ms. Liley on several occasions." On one such occasion, according to Jones, Dalton threatened defendant with a meat cleaver. Jones also claims that Dalton is known as being violent, aggressive, and untruthful.

Jones's affidavit also attempts to impeach the credibility of Eugene Tyner and Dwayne Stewart. Jones states that he has witnessed both men using drugs on a regular basis and knows them both to be drug addicts and alcoholics. He also claims that, according to the "word around the neighborhood," Dalton paid both men in liquor in exchange for testimony that defendant was carrying a gun. Finally, Jones claims that Eugene and Stewart have a reputation for being dishonest.

Even assuming that the testimony of Jones was newly discovered, not cumulative, and could not have been discovered with reasonable diligence, it does not make a different result probable on retrial. To start with, Jones's claim that Dalton previously attacked defendant on multiple occasions would not be admissible to impeach Dalton under MRE 608. MRE 608(b) states that specific instances of the conduct of a witness, for the purpose of attacking the witness's credibility, may not be proved by extrinsic evidence. Therefore, testimony by Jones regarding specific attacks committed by Dalton against defendant would not be admissible.

In addition, Jones's claim that Dalton has a reputation for being violent and aggressive would not be admissible under MRE 608. MRE 608(a) states that the credibility of a witness may only be attacked in the form of opinion or reputation testimony if the testimony refers to the witness's character for truthfulness or untruthfulness. Dalton's reputation of being violent and

-3-

aggressive has no bearing on her character for truthfulness, and thus, would be barred under MRE 608(a). Jones's testimony that Dalton is known for being untruthful would be admissible under MRE 608(a). However, this assertion has no "exculpatory connection to testimony concerning a material matter" and a different result on retrial is not probable. *Grissom*, 492 Mich at 321.

Jones's statements regarding the alleged drug and alcohol use by Eugene and Stewart would also be barred by MRE 608. As stated above, MRE 608(b) forbids attacking a witness's credibility with extrinsic evidence of specific instances of conduct. The rule only allows an inquiry into specific instances of conduct on cross-examination if the conduct is probative of the witness's character for truthfulness. The testimony of Jones is extrinsic evidence and is thus barred. It also is not probative of Eugene's or Stewart's character for truthfulness, and thus, could not be inquired about on cross-examination.

Jones's statement that he heard from around the neighborhood that Dalton paid off Eugene and Stewart in liquor for favorable testimony would also be barred as hearsay. MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 802 states that hearsay is not admissible unless otherwise provided by rule. This statement by Jones is clearly being offered for its truth, i.e., that Eugene and Stewart lied about defendant carrying a gun in exchange for liquor from Dalton. Since this statement was inadmissible, it would not have made a different result on retrial probable. While Jones's statement that Eugene and Stewart both had reputations for dishonesty would have been admissible under MRE 608(a), this testimony also has no "exculpatory connection to testimony concerning a material matter" and a different result on retrial would not be probable. *Grissom*, 492 Mich at 321.

Adler's petition for a PPO against Dalton also would not have been admissible to impeach Dalton's testimony at trial. Like with Jones's statement that he witnessed Dalton attack defendant on multiple occasions, Adler's petition states that he was attacked by Dalton with a knife. However, as stated above, MRE 608(b) prohibits extrinsic evidence of a witness's specific instances of conduct for impeachment purposes. Therefore, this newly discovered evidence would have been inadmissible and does not satisfy the requirements set forth in *Cress*.

The last piece of newly discovered evidence consists of defendant's medical records. According to defendant, these records demonstrate that she was suffering from alcoholism, multiple mental disorders, and was taking tranquilizers at the time she gave her statement to Duda. Defendant does not explain why these records could not have been discovered with reasonable diligence. Considering that these were defendant's own medical records, it seems clear that they could have been procured at trial with reasonable diligence. Therefore, defendant has failed to satisfy the requirements set forth in *Cress* and is not entitled to a new trial on the basis of newly discovered evidence.

Defendant also claimed that she was denied her constitutional right to the effective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "Because of the

difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order for the defendant to satisfy the prejudice prong of the analysis, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Pickens*, 446 Mich at 312 (citing *Strickland*, 466 US at 695).

Defendant claims that her trial counsel was ineffective when she failed to "investigate this matter, failed to subpoena any witnesses, failed to impeach witnesses with readily accessible evidence, and failed to obtain other court documents/records that would have otherwise demonstrated the lack of credibility in the witness testimony presented to the Court."

Defendant argues that her trial counsel's failure to subpoena any witnesses constituted deficient performance because there were two individuals, Jimmy Tyner and another man named "Jo Jo," who could have testified that defendant never had a gun on the date in question. In support of this claim, defendant attached a statement by Jimmy given to police after the shooting. Contrary to defendant's assertion, Jimmy's statement does not explicitly state that defendant did not have a gun during the incident. Jimmy merely stated that he did not see if either defendant or Dalton was carrying a weapon during their altercation. Significantly, Jimmy stated that he heard three gun shots fired during the fight. This number of shots is consistent with what Dalton claimed, and thus, corroborates her testimony. In addition, defendant admits that both Jimmy and Jo Jo refused to come to court to testify because they were on parole. Although defendant argues that she explicitly requested her trial counsel to call these witnesses, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Therefore, it cannot be said that the decision of defendant's trial counsel not to call Jimmy and Jo Jo to testify "fell below an objective standard of reasonableness." *Pickens*, 446 Mich 298, 338.

Defendant also argues that the performance of her trial counsel was deficient when she failed to properly investigate and impeach the credibility of the prosecution's witnesses. The brief submitted by defendant's appellate counsel does not specify exactly what defendant's trial counsel failed to investigate and impeach, however, the brief does note slight variations in Dalton's statements to police, preliminary examination testimony, and her testimony at trial. Defendant notes that Dalton gave multiple statements and testimony in which the number of shots allegedly fired by defendant varied. In addition, at defendant's preliminary examination, Dalton stated that the women walked out of the back of the house, as opposed to the front as Dalton testified at trial.

Despite defendant's claims, the record demonstrates that defendant's trial counsel attempted to impeach Dalton with at least some of these prior inconsistent statements. On cross-examination at trial, defendant's trial counsel asked Dalton if she was sure that she walked out of the front door of the house prior to the shooting. Dalton stated that she was sure she went out of the front door, to which defense counsel responded that Dalton had given testimony at the preliminary examination that the women exited the back of the home prior to the shooting. Defense counsel then subsequently impeached Dalton by noting that in a prior statement to police, Dalton claimed that defendant pointed the weapon at her and fired immediately after

racking and shooting the gun in the air. Despite defendant's claims, there is evidence in the record demonstrating defense counsel's attempts to impeach Dalton with her prior statements. Thus it cannot be said that defense counsel's performance in cross-examining Dalton "fell below an objective standard of reasonableness." *Pickens*, 446 Mich 298, 338.

Defendant also argues that the performance of her trial counsel was deficient where counsel failed to adequately impeach Eugene and Stewart. Defendant claims that defense counsel should have impeached Eugene with a prior inconsistent statement given to police after the shooting. However, a review of the statement demonstrates that there are not any inconsistencies between the statement and his testimony at trial. In both his statement and in his testimony, Eugene stated that both defendant and Dalton were arguing and they both walked from the bathroom of the home to the outside of the home. Eugene stated in his statement and in court that he heard "three to four" shots fired.

Defendant also claims that her trial counsel failed to properly impeach Eugene with an armed robbery conviction as well as five convictions involving alcohol related misdemeanors. However, none of these convictions would have been admissible for impeachment. MRE 609 only allows for impeachment by evidence of a criminal conviction where the crime contained an element of dishonesty or false statement, or the crime contained an element of theft and was punishable by more than one year in prison and the evidence has significant probative value on the issue of credibility. MRE 609(a)(1)-(2). Eugene's alcohol related offenses do not contain an element of dishonesty or false statement or theft. While Eugene's armed robbery conviction involves an element of theft, the conviction is well beyond the 10-year time limit set forth in MRE 609(c), thus making it inadmissible for impeachment as well.

Defendant also argues that her trial counsel should have impeached Stewart with evidence of his previous criminal convictions. However, these convictions also are barred by MRE 609. Most of Stewart's previous convictions are alcohol related offenses and thus do not involve an element of dishonesty, false statement, or theft. While Stewart was convicted of second-degree retail fraud, this conviction occurred in 1998 and Stewart was not subject to any incarceration. Thus, this conviction is also inadmissible under MRE 609. MRE 609(c). Because defendant has failed to demonstrate that her trial counsel's performance was deficient, this Court need not address whether defendant was prejudiced by this performance.

Defendant also is not entitled to a new trial on the grounds that she has satisfied the "actual innocence" standard. Reviews of an actual innocence claim are only to be conducted in "extraordinary cases." *People v Swain*, 288 Mich App 609, 638; 794 NW2d 92 (2010). Defendant "must show that it is more likely than not that no reasonable juror would have found [the defendant] guilty beyond a reasonable doubt." *Id*. Defendant claims that if the testimony of Jimmy, Adler, and Jones had been introduced at trial, it is more likely than not that no reasonable trier of fact would have found defendant guilty. However, as stated above, the testimony of Adler and Jones simply consisted of inadmissible impeachment evidence and Jimmy's testimony actually corroborated the testimony of Dalton. Therefore, defendant is unable to satisfy the "actual innocence" standard.

Defendant next argues that the evidence relied upon by the trial court was insufficient to convict her of any of the three offenses with which she was charged. We disagree.

When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). This Court reviews the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

MCL 750.227(1) prohibits a person from carrying a "dangerous weapon . . . concealed on or about his or her person, or whether concealed or otherwise in any vehicle operated or occupied by the person." "Carrying a concealed weapon is a general intent crime. The only intent necessary is an intent to do the act prohibited, to knowingly carry the weapon on one's person or in an automobile." *People v Combs*, 160 Mich App 666, 673; 408 NW2d 420 (1987) (citation omitted). As the trial court noted in reaching its verdict, defendant admitted in her statement to police that she had been carrying the weapon in the trunk of her vehicle prior to entering the home. Therefore, there was sufficient evidence to prove beyond a reasonable doubt that defendant knowingly carried a concealed weapon in the trunk of her vehicle.

There was also sufficient evidence to convict defendant of felonious assault. The elements of felonious assault are as follows: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999) (citation omitted). "[F]elonious assault is a specific intent crime. Thus, felonious assault requires the additional showing that the defendant intended to injure or intended to put the victim in reasonable fear or apprehension of an immediate battery. The statute also requires the use of a dangerous weapon in carrying out the assault." *People v Robinson*, 145 Mich App 562, 564; 378 NW2d 551 (1985) (quotation marks and citation omitted). Dalton testified that defendant lifted up her shirt to show Dalton that she was carrying a gun. Dalton testified that defendant then told Dalton that she was going to "pistol whip" her and followed her out of the home where she fired the weapon in the air. Dalton also described how defendant attempted to strike her with the weapon and fired multiple shots towards her while they were wrestling over the weapon. Most significantly, the trial court properly relied on defendant's own statement to police that she had a weapon in the trunk of her car and was threatening Dalton with it. Therefore, there was sufficient evidence to convict defendant of felonious assault.

The elements of felony-firearm are that the defendant possessed a firearm during the commission or attempt to commit a felony. *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996). "Possession may be actual or constructive and may be proved by circumstantial evidence." *People v Burgenmeyer*, 461 Mich 431, 437; 606 NW2d 645, 648 (2000) (citations and quotations omitted). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Id.* at 438. Here, there is direct evidence of both actual and constructive possession of a weapon by defendant during the commission of her felonious assault. Dalton testified that defendant had a firearm in a holster under her shirt and threatened Dalton with it. Dalton testified that defendant then proceeded to attack her with the weapon. In addition, defendant's own statement to police established constructive possession. Defendant told police that she was going through her trunk while the weapon was in it and was threatening Dalton with it. This shows that defendant knew the location of the weapon and it was readily accessible to her. Therefore, there was sufficient evidence to convict defendant of felony-firearm.

-7-

Defendant also argues that she is entitled to resentencing because her presentence investigation report (PSIR) was incomplete and was based upon inaccurate and false information. We disagree, but remand for the ministerial task of correcting the PSIR.

"We review the sentencing court's response to a claim of inaccuracies in defendant's PSIR for an abuse of discretion." *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003).

"The sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges." *Id*. at 648-649. The trial court has the option to determine the accuracy of the information, accept defendant's version, or simply disregard the challenged information. *Id*. If the trial court chooses to disregard the challenged information, it must clearly indicate that it did not consider the alleged inaccuracy in determining the defendant's sentence. *Id*.

While defendant did raise an issue in regard to the inaccuracy of her PSIR in her motion for resentencing, the trial court declined to address it because it was not supported by affidavit. However, it is clear from the record and from defendant's sentences that any inaccuracies in the PSIR did not affect defendant's sentences. To the contrary, information regarding defendant's background seemed to help defendant receive a favorable sentence. The trial court sentenced defendant to time served for her carrying a concealed weapon and felonious assault convictions and noted that she was sentencing defendant to two year's imprisonment for the felony-firearm conviction because "that's a mandatory two years. I have no control over that." Therefore, it is clear that the trial court did not rely on any challenged information because the only punishment handed down was the two years' imprisonment for the felony-firearm conviction that the trial court was bound by statute to impose. Because the trial court did not rely on any challenged information during sentencing, resentencing is not required. *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001). However, the information regarding defendant's THC use, lack of substance abuse treatment, and lack of history of physical abuse must be stricken from the PSIR. Therefore, we remand for the ministerial task of correcting the PSIR.

In a Standard 4 brief, defendant argues that she suffered from temporary insanity at the time she gave her incriminating statement to Duda. Defendant argues that this insanity was caused by involuntary intoxication and other mental and medical disorders and thus she could not have validly waived her *Miranda*[1] rights. We disagree.

At trial, defendant's counsel stipulated on the record that defendant was given her *Miranda* rights prior to her interrogation by Duda and that defendant voluntarily waived these rights. Although defendant's trial counsel seemingly waived this issue by stipulating to defendant's voluntary waiver, defendant now contends on appeal that her attorney ignored her requests to object to the admission of the statement based on defendant's mental condition at the time of the interrogation. Because defendant did not raise this objection at trial, this issue is

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

unpreserved for appeal. *Giovannini*, 271 Mich App at 414. We review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Two requirements must be met before an individual can effectively waive his or her *Miranda* rights. The Supreme Court has held that first, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135, 1141; 89 L Ed 2d 410 (1986). In addition to being voluntary, the defendant's waiver must be knowing and intelligent, i.e., it "must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

In determining whether both the requirements of a voluntary and knowing waiver have been met, the court must consider the totality of the circumstances surrounding the interrogation. *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000). This is an objective inquiry and includes circumstances such as the suspect's age, experience, education, background, and intelligence. *Id.* It also includes an evaluation of whether the suspect has the capacity to understand the warnings given to him, the nature of his rights, and the consequences of waiver. *Id.* "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.*

Because no single factor is determinative, the fact that a person is under the influence of intoxicants does not per se render a statement involuntary. *People v Lumley*, 154 Mich App 618, 624; 398 NW2d 474 (1986). While a suspect's level of intoxication is one factor to consider in reviewing the objective circumstances of a suspect's waiver, it cannot be the only factor in concluding that a waiver was made involuntarily. *People v Cheatham*, 453 Mich 1, 43; 551 NW2d 355 (1996). "[A] deficiency in the defendant that is not exploited by the police cannot annul the voluntariness of a confession unless there is evidence of police coercion." *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998).

Despite defendant's claims, there is no evidence to suggest that she was coerced into giving a statement or that she did not comprehend the nature of her rights and the consequences of abandoning them when she signed her Advice of Rights. While defendant did attach a psychiatric evaluation conducted by Dr. Stephanie Stevenson of the Northeast Guidance Center to her brief on appeal as proof of her impaired mental state, this simply confirms that defendant was on medication to help her with the side effects of her withdrawal from alcohol. There is no indication that at the time she signed the waiver of her rights and gave her statement that she was unaware of the consequences of abandoning her rights. *Moran*, 475 US at 421.

To the contrary, her statements to Duda indicate that she was aware of the consequences of speaking with police and attempted to give an exculpatory version of events. Defendant told Duda that Dalton started pushing her and that she struck Dalton with a glass bottle in response. She then stated that she went outside to her car and, although she did threaten to shoot Dalton, Jimmy took the gun away from her. Defendant denied ever pointing or firing the gun at Dalton. When asked if her fingerprints would be found on the gun, defendant told Duda that they would only be found because she had previously put bullets in the weapon. Even if there was evidence of intoxication or other mental disorders causing temporary insanity, the totality of the

circumstances, including the substance of defendant's statement, indicates that her waiver was given voluntarily and was knowing and intelligent. Therefore, it was not plain error for the trial court to allow defendant's statement to Duda to be read into the record.

Affirmed, but remanded for the ministerial task of correcting the PSIR. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens